# IN RE APPROPRIATION OF PROPERTY OF COOLEY ELLIS BY OHIO TURNPIKE COMMISSION.

Ohio Appeals, Sixth District, Lucas County.

No. 4777.  Decided February 17, 1955.

418

420

Bowman, Hanna & Middleton, Bowling Green, for plaintiff-appellant.
Taylor, Cruey & Kelb, Toledo, for plaintiff-appellant.
Frank C. Dunbar, Jr., General Counsel, Columbus, and Fuller, Harrington, Seney & Henry, Toledo, for defendant-appellee.

(HURD, PJ, KOVACHY, J, SKEEL, J, of Eighth District, sitting by designation in the Sixth District.)

## OPINION

By HURD, PJ.

This appropriation case is here appealed on questions of law from a judgment rendered upon the verdict of a jury in the Court of Common Pleas of Lucas County. Plaintiff-appellant is Cooley Ellis the landowner, and the defendant-appellee is the Ohio Turnpike Commission.

This appeal involves a proceeding instituted by the Commission to appropriate a right of way and a permanent easement over lands of Ellis which fronted 645.43 feet on Seventh Avenue in the City of Toledo and extended back to the Wabash Railroad on Radford Road and Ogontz Avenue, 3422.94 feet, or about 2/3 of a mile.

The jury returned a verdict for Ellis in the sum of $12,265.00 as compensation for the property taken and $32,081.50 as damages to the residue, or a total sum of $44,346.50 for which judgment was rendered December 1, 1953.

It is claimed by Ellis that the compensation and damages awarded are "grossly inadequate" and that the court erred in many respects set forth in the assignments of error, as follows:

"1. The court erred in its failure to dismiss for want of jurisdiction at the preliminary hearing.

"2. The court erred in excluding from the evidence the plans for development of the tract for apartment houses and the fact that application for F. H. A. financing had been made.

"3. The court erred in the admission of evidence as to the cost of the property in 1947.

"4. The court erred in failing to limit the evidence of the cost of the property.

"5. The court erred in admitting a purported financial statement of Ellis.

"6. The court erred in permitting the witness, Schenck, to testify.

"7. The court erred in permitting evidence as to the cost of other properties.

"8. The court erred in instructing the jury as to the value of testimony of experts.

"9. The court erred in its instructions as to billboard and sign rights, and in failing to charge in relation to abutter's rights appropriated.

"10. The verdict was manifestly against the weight of the evidence.

"11. There was misconduct on the part of a juror."

The first assignment of error to the effect that the trial court erred in its failure to dismiss the petition for want of jurisdiction at the preliminary hearing, cannot be sustained, in view of the decision of the Supreme Court in **Ellis v. Turnpike Commission, 162 Oh St 86,** for further discussion of which see decision and opinion in equity appeal No. 4757, entitled Ellis v. Turnpike Commission, entered by this court November 24, 1954.

Proceeding to the second assignment of error, it is claimed that the trial court erred prejudicially in sustaining objections to the introduction of certain plans for the development of part of the subject property for multiple family dwellings. The record shows that five acres of the tract fronting on Seventh Avenue were zoned for commercial purposes and that the remainder of the tract was zoned for multiple family dwellings or apartment houses. Expert testimony was offered tending to show that the highest and best use of this remainder would be for multiple family dwellings; that because of its location on the Anthony Wayne Trail, which presently is the only limited access express highway in Toledo, the property is excellently situated for a large scale apartment house development.

The record further shows that in the year 1948, long prior to the commencement of the instant proceedings and without any knowledge that the land would eventually be sought by the State for Turnpike purposes, Ellis had employed one Leonard H. Gerow, an architect of the firm of Gerow & Conklin of Toledo, for the purpose of drafting plans for the construction of 625 apartments to be built on the back 45.93 acres of this tract. The plans thus prepared were offered in evidence by Ellis as Exhibits 12 to 15, both inclusive, to show that the highest and best use of that part of the

property would be for multiple family dwellings. The offers were made separately as to each exhibit and overruled as to each. The trial court in sustaining objections to the introduction of these exhibits, said in part:

"*  *  * It is not permissible, and in our opinion would be error for the court to admit in evidence plans and specifications for any specific project which is not actually in existence on the premises or which is not even under construction."

That this conclusion was erroneous is clear from an examination of the cases of **Railway v. Longworth, 30 Oh St 108; Goodin v. Canal Co., 18 Oh St 169; Sowers Supt. v. Schaeffer, 155 Oh St 454; Langaneau Mfg. Co. v. Cleveland, 159 Oh St 525.**

In the case of Railway v. Longworth, supra, it appears that in the appropriation proceedings, the executors for the land owner offered before the Probate Court "to prove to the jury that long prior to the commencement of these proceedings they caused their tract of land in Locland * * to be subdivided and laid off into lots, streets and alleys for the purpose of selling the same and cause a plat of such subdivision to be made of record but which had not yet been recorded and offered to put said plat in evidence to the jury as tending to show the availability of such property for subdivision into small lots **and its value thus subdivided."** (emphasis ours.) The trial court ruled "that as defendants' plot had not been recorded nor represented a town plat, dedicated in pais, it could not be offered in evidence for any purpose, upon the issue before the jury, except to show the general location of the property, the course of the proposed railroad through the same and the availability of the property for subdivision into smaller lots."

It will be noted that the offer in the Longworth case was allowed for limited purposes only, whereas in the case at bar the offer was rejected in toto.

The Supreme Court, in affirming a judgment of reversal of the Probate Court by the Common Pleas Court and the District Courts, held inter alia, that such plat was admissible and that it was prejudicial error to exclude it.

At page 111, the Supreme Court said in part:

"If it (the land) was more valuable in the particular mode in which it had been subdivided into lots, that fact might also be shown and **in connection with such proof a diagram or plat of such subdivision was admissible, though unrecorded not as a town plat but as a diagram or plan for increasing the value of property in the market."** (Emphasis added.)

In the course of the opinion the court cited and quoted with approval from the early case of The Queen v. Brown, L. R. 2 Q. B. 630, in part as follows:

"A jury, whether the dispute be as to the value of land required to be taken by the company, or as compensation for damages by severance, in assessing the amount to which the land owner is entitled, have to consider the real value of the land and may take into account not only the present purpose to which the land is applied, but also any other more beneficial purpose to which, in the course of events at no remote period,

it may be applied, just as an owner might, if he were bargaining with a purchaser in the market place. * * *."

The decision in Railway v. Longworth, supra, stands unreversed and unmodified to this date, although recorded in 1887. In view of this decision, we believe that the argument of counsel for the Commission that "the fact that five years before the owner had employed an architect to prepare plans for multiple dwellings would have no probative value" is untenable, since the analogy between the Longworth case and the instant case is immediately apparent and unmistakable.

The rule in appropriation cases as there stated is that:

"the jury are to take into consideration the real value of land taken and the diminished value to the remainder and may for that purpose take into account not only the purposes to which the land is or has been applied, but any other beneficial purpose to which it may be applied which would affect the amount of compensation or damages."

See Railway v. Longworth, supra, second syllabus.

This holding is likewise in harmony with the rule stated in the later case of **In re Appropriation by Supt. of Public Works: Sowers, Supt. v. Schaeffer, 155 Oh St 454 (1951)** as follows:

"The rule of valuation in a land appropriation proceeding is not what the property is worth for any particular use, but what it is worth generally for any and all uses for which it might be suitable, **including the most valuable uses to which it can reasonably and practically be adapted."** (Parag. 3 of syllabus) (Emphasis added.)

And at page 458, the court said:

"The true value of anything is what it is worth when applied to its natural and legitimate uses—its **best and most valuable uses. Goodin v. Cinn. & Whitewater Canal Co., 18 Oh St 169."** (Emphasis added.)

For a further discussion of the correct interpretation of the Goodin and Schaeffer cases, see our opinion in Ellis v. Turnpike, appeal No. 4778.

The recent case of **Langaneau Mfg. Co. v. Cleveland, 159 Oh St 525, (1953)** is likewise conclusive on the subject. where the court held as appears in the third syllabus:

"**3. It is the duty of the court in an appropriation proceedings to afford the property owner the right to fully show the extent and character of the real estate proposed to be taken and its maximum value for any purpose for which its use is available, including the use which is presently made of it."** (Emphasis added.)

The argument advanced by appellee that oral testimony had been permitted in respect to these matters, does not cure the error of refusing to admit the plans into evidence. Neither is the error cured by the admission in evidence of Ellis' exhibit 11, showing a "grouping plan" of the entire tract. The rule of law which allowed the admission in evidence of Exhibit 11, prepared by the same architects is equally applicable to exhibits 12 to 15, inclusive, which the court refused to admit in evidence. Vissual evidence is of immeasurable value for demonstrative purposes. The familiar saying in journalistic circles that "one picture is worth ten thousand words" is peculiarly applicable here as the expert witnesses for the

landowner would have been able to demonstrate by the use of the plans they claim most valuable and best uses of the property and conversely, the expert witnesses for the Commission would have had an equal opportunity to testify as to their opinions in respect thereof. The jury would thus be in a position to relate the visual evidence to the oral testimony on the subject in a most advantageous manner, without prejudice to either party. In any event, the proffered evidence was competent and should have been admitted.

Counsel for the Commission have cited and quoted from cases of many other jurisdictions which are of interest from an academic viewpoint, but which cannot be considered as authority in Ohio, in view of the decision in Railway v. Longworth, and the related cases cited, supra.

It is our conclusion, therefore, that Assignment of Error No 2 must be sustained, holding as we do that the rejection in evidence of the plans offered as Exhibits 12 to 15, both inclusive, constituted error prejudicial to the rights of the party complaining.

We proceed now to a consideration of Assignment of Error Nos. 3 and 4, to the effect that the court erred in the admission of evidence as to the purchase price of the property in question in 1947, and that the court erred in failing to limit the evidence of the cost of the property.

It appears that Ellis acquired the property in 1947 but that the deed was not delivered until January, 1948. The appropriation resolution in this case was adopted September 1, 1953, and the trial was held in November 1953. Thus it appears that trial was had some six years after the purchase of the property.

It is claimed by Ellis that the neighborhood had changed considerably and that the growth of the city was out toward Maumee along the Anthony Wayne Trail, resulting in a change of zoning and that it was error on the part of the trial court to permit counsel for appellee to cross-examine Ellis, over objection of his counsel, as to the price paid for the land. The evidence indicates that the subject premises were unimproved both at the time of purchase and at the time of trial. The trial court in ruling on this issue stated:

"It appears that the property is in the same condition as when it was acquired by Ellis."

Counsel for appellant have cited cases from other jurisdictions and text authorities to the effect that when in an appropriation case the purchase took place several years prior to the taking, evidence of the price paid for the land is not admissible. On this question there is definitely a division of authority. However, the law in Ohio, while not entirely clear, is apparently contrary to the contention of appellant. The Ohio case upon which appellant relies is Schaaf v. State, ex Waid, 11 Abs 466 (1931) decided by the 5th District Court of Appeals, Dec. 18, 1931 the syllabus of which reads as follows:

"When defendants in an appropriation proceeding put in evidence a deed dated three years previously at which time the land was purchased at judicial sale, for the specific purpose of showing amount and title, it is prejudicial error to allow argument and comment on the price stated

therein, since the only issue to be tried is the present value of the property."

The judgment in that case was reversed by the Supreme Court in **Waid, Director of Highways, v. Schaaf et al, 127 Oh St 274** and the judgments of the Common Pleas Court and the Probate Court were affirmed. The sole reason assigned for reversing the judgment however, was that the deed designated as "Exhibit C" was not introduced in evidence in the Probate Court. An examination of the opinion of the Court of Appeals indicates that the sale of the property in question was a judicial sale from which we infer that it may have been a forced sale which, if true, would not be competent evidence in any event as the rule applies only to voluntary sales.

Counsel for the Commission in support of their contention have cited and quoted from the cases of other jurisdictions and have cited and quoted from 5 Nichols on Eminent Domain, Sec. 21.2; 1 Orgel on Valuation, Eminent Domain, Sec. 36, and also Sec. 136, p. 581, which indicate that the admissibility of such evidence is largely within the sound discretion of the trial court on cross-examination. Counsel also cite and quote from the decision of the Circuit Court of Cuyahoga County in Cleveland T & V. R. R. v. Gorsuch et al, 8 O. C. C. (N. S.) 297, where, in a railroad condemnation proceeding, the defendant was asked on cross-examination what he had paid for the property. In holding that the trial court erred in sustaining an objection to this inquiry, the appellate court said:

"* * * The price paid does not fix the value, nor does the value fourteen months prior to the time at which value is now to be determined, even when fixed, determine the present value but both having a bearing on present value and are admissible in evidence as tending to show present value * * *."

The judgment of the Circuit Court was affirmed by the Supreme Court without opinion. 76 Oh St 609. It will be noted that the sale in that case was fourteen months prior to the time of the taking which indicates that it was considered to be a recent sale.

It would indeed be difficult to fix an arbitrary rule as to the period of time within which the purchase price of the subject property should be either admitted in evidence or excluded.

Frequently there are many other factors involved, such as changed conditions in the subject property, including buildings and other improvements thereon; also there may be substantial changes in conditions of the surrounding property such as change of character of neighborhood, the economic growth of the area, whether business or residential, all of which would have a bearing upon the probative value of such testimony.

Consequently, the better rule seems to be to admit such evidence if in the sound discretion of the trial court the date of purchase is not so remote in time, and conditions with respect to the property have not changed so materially as to destroy the evidentiary value. This view is supported by respectable authority in other jurisdictions.

In Love v. U. S. decided by the Circuit Court of Appeals Fifth District, April 19, 1944, 141 Fed. 2d, 981 at page 983, the court said:

"The admission in evidence of the 1933 deed is objected to for the rea-

son that it disclosed that the consideration paid for the land in 1933 was only $4,000.00 which appellants say is irrelevant to the issue of market value because too remote in time. The objection fails for two reasons. First, the admissibility of the deed evidencing a purchase of the property seven years before the date of taking was a matter within the discretion of the trial judge. United States v. Becktold Co. 8 Cir. 129 F. 2d 473, 479 * * *."

In Orgel on Eminent Domain, Sec. 136 p. 581, the Love case among others is cited in a note as follows:

"Where sales of the identical property are offered in evidence, the question generally involved is whether the time of the sale is so remote as to destroy the evidentiary value. The matter is largely in the discretion of the court and considerable latitude is observed in the decisions. Compare Thornton v. Birmingham, 250 Ala. 651, 35 So. 2d, 545, 7 A. L. R. 2d 773 (1948) citing Orgel (sale 2 years before taking); Love v. United States, 141 F. 2d 981 (1944) (sale 7 years before taking); St. Louis v. Paramount Shoe Mfg. Co. 237 Mo. App. 200 168 S. W. 2d, 149 (1943); see also United States v. A Certain Tract or Parcel of Land 47 F. Supp. 30 (S. D. Ga. 1942)."

We think that evidence of purchase price of the indentical property is a matter within the sound discretion of the trial court with proper instructions to the effect that the only issue to be tried is the value of the property at the time of the taking and evidence admitted by the trial court as to the purchase price thereof may be considered only as one factor for whatever probative value it may have, if any, as bearing upon the value of the property at the time of the taking by eminent domain We conclude, therefore, that the trial court did not abuse its discretion in the admission of this evidence and in failing to limit the same, and, therefore, assignments of error Nos. 3 and 4 are overruled.

Proceeding now to a consideration of assignment of error No. 5, to the effect that the court erred in admitting evidence of a purported financial statement of Ellis, it is claimed that the court erred in three respects, namely, (1) that there was no evidence to show that the statement was authorized by Ellis; (2) that the statement, if authorized, was for use only in a divorce suit for the purpose of a property settlement; (3) that the statements were illegally obtained and a violation of privileged communication between attorney and client.

It appears that on the financial statement in question, the cost prices of all the properties which Ellis owned were listed. Among many other properties listed was the property here subject to appropriation and the purchase price and market value thereof were shown by the evidence to be precisely the same. Counsel for the former Mrs. Ellis testified to the effect that when the statement was given to him, he was told that the figure under the column "market value" merely showed the cost or purchase price and that it was so considered by him. Counsel for Mrs. Ellis further testified that he could not say that the attorney who gave it to him (who was not one of record) represented, or was acting as agent for Ellis, in turning over the statement to him. Counsel for Ellis then called counsel for the Commission as a witness to testify as to where he procured the copy of the financial statement. He declined to answer on the ground of

privilege in which declination he was sustained by the court and a motion to exclude the document was overruled. We find no evidence in the record showing that the statement was authorized by Ellis. It appears that the litigation incident to the divorce case between Ellis and his former wife, extended over a period of more than three years and terminated in a divorce in August, 1951, or a little over two years before this appropriation case was instituted in September, 1953. We find that the effect of this evidence was to interject, to his prejudice, the character and reputation of Ellis whereas this being an action in rem, the sole question was the reasonable market value of the land involved and the damage to the residue irrespective of the domestic troubles and financial worth of the owner.

The exhibit appears to be a complete financial statement which includes not only the subject property but other properties, both real and personal, showing an itemization of quick assets, cash, inventory of a business entitled, "Kahler Company" fixed assets, various properties located in Toledo, oil investments, automobiles, 22 buildings described as "New Albany Houses," Ellistown Houses with assets totalling $1,170,682.03, which after deduction of liabilities, shows net assets of $481,895.92. There can be no doubt that the subject property was shown under "Market Value" at the price Ellis paid for it six years before these proceedings. This appears affirmatively both from the evidence and by the comment of the trial judge at page 416 of the record where he stated:

"The difference is very clear. The fair implication is that he had nothing to do with market value on that."

Since the price Ellis paid for the property six years before was already in evidence, having been testifed to by Ellis under cross-examination, and since the financial statement was purportedly used in the divorce case to settle the marital difficulties and property disputes between Ellis and his wife, and since the exhibit contained a full financial statement of Ellis, including properties and cash position completely irrelevant to the issue here presented, we conclude that the admission of such an exhibit could have no effect other than to prejudice the jury against Ellis, having no probative value either as an admission against interest or otherwise. In our opinion the predominant character of the document was such as unquestionably to influence the thinking of the jury to the prejudice of Ellis.

It should be remembered that in appropriation cases there are no formal pleadings or definite issues which admit of affirmation upon one side or denial upon the other, as to the value of the property taken. Hence the doctrine of "Burden of Proof" has no application. The jury acts merely as an assessing or appraising board, determining the fair market value of the property from all the evidence submitted. See syllabi in **Martin et, v. City of Columbus, 101 Oh St 1.** See, also, **Gas Transit v. Wolfe, 159 Oh St 391** at page 393. It is essentially a proceeding in rem. See: **In re Appropriation: Sowers, Supt. v. Schaeffer, 155 Oh St 454.** It should also be noted that an owner of property whether expert or not, is entitled to testify as to his opinion of the value of his property at the time of taking. See **Morris v. Huber, 15 Abs 71, Brates v. McDonald, 95 Oh Ap 448.**

This being a proceeding in rem and not in personam, the divorce

proceedings five years prior thereto, and his financial worth at that time, were completely irrelevant, by reason whereof the admission of such evidence was highly prejudicial and constituted reversible error. Therefore, we find that assignment of error No. 5 is well taken and should be sustained.

Proceeding to a consideration of assignment of error No. 6, to the effect that the court erred in permitting the witness, Schenck, to testify, it appears that the Commission called as a witness, Charles Schenck of Columbus, Ohio, to give his expert opinion as to values of property in Lucas County. The record shows that the witness had never bought or sold property in Lucas County. He had made one other appraisal in Toledo ten years previously but had no other experience with values in Toledo. The record shows that his opinion of values in Toledo and Maumee was not based on experience or actual knowledge but was formulated entirely by an inspection of public records and revenue stamps on deeds.

While there may be some doubt as to the qualification of the witness to testify concerning land values in Toledo, we cannot say that it was error to permit him to testify at all, as his experiences with the Turnpike Commission and as a real estate agent dealer may have qualified him generally as an expert witness. This was a question largely within the sound discretion of the trial court. But in our opinion it was prejudicial error to permit him to testify as to sales and values of other properties based solely and exclusively upon information gleaned from examination of public records and revenue stamps on deeds. Such evidence has been held inadmissible by text writers generally and by authoritative decisions of courts of last resort. Specifically, see Schuck v. West Side Belt R. R. Co. 283 Pa. 152, syllabus 2, and Tiffany v. Deleware L. & W. R. R. Co. 262 Pa. 300, syllabus 1 thereof being as follows:

"1. In eminent domain proceedings to assess damages to a tract of land caused by the condemnation of part thereof for railroad purposes, a witness who has had no direct knowledge of sales of land in the neighborhood, cannot qualify himself to testify as to the market value of the land by **examining the public records of conveyances of land in the neighborhood, for the purpose of ascertaining the consideration named in the deeds.**" (Emphasis added.)

In Jahr on Eminent Domain, published in 1953, Sec. 133, p. 205, we find the following:

"Whether the witness, be he expert or otherwise, is sufficiently familar with the property to be entitled to express an opinion, is a question for the trial court or the trial commissioners. However, when the question is presented as to the witness' knowledge of sales, the courts generally are more exacting and require the expert witness to have personal knowledge. **Thus a witness will not be permitted to testify as to value where his sales are based exclusively upon information derived from a reading of a public record, revenue stamp inspections, stamps affixed to deeds that is, and the like.**" (Emphasis added.)

Authorities cited in support of the text are as follows:

"Denver v. Quick, 108 Colo. 111, 113 Pac. 2d, 999, 134 A. L. R. 1120; Tiffany v. Delaware L & W R. R., 262 Pa. 300, 302; 105 Atl. 101; Schuck

v. West Side R. R. Co. 283 Pa. 152, 155; 128 Atl. 832; Essek Co. Park Comm. v. Brokow, 107 N. J. Law 110, 112; 150 Atl. 387; Chi. & W. I.. R. R. Co. v. Heidenreich, 254 Ill. 231; 98 N. E. 567; Annot. Cases 1913C, 266."

See, also: Nichols on Eminent Domain, 3rd Ed. Vol. 5 Sec. 21.3 Page 278 et seq.

It is held generally that this character of testimony is objectionable from many points of view, being mere hearsay, unreliable and inadequate proof of the competency of the witness. Furthermore, public documents speak for themselves and if their contents are admissible for any purpose, the best evidence rule requires their production in open court.

While there is some holding to the contrary, we are supported in our view by the greater weight of authority on this subject.

We proceed now to a consideration of assignment of error No. 7, to the effect that the court erred in permitting evidence of sales of other properties claimed to be similar to the subject property. Argument on this assignment of error is divided into three parts; (a) price determined by revenue stamps; (b) sales referred to were not comparable; (c) evidence of other sales was only admissible on cross-examination.

Considering first sub-head (a), it is complained that valuation witnesses for the Commission—Mayer, Rupert and Schenck—based their testimony on information gained from inspection of public records and from the revenue stamps on deeds.

We have discussed this subject under assignment of error No. 6 where we express the view that the valuation testimony of these witnesses for the Commission, in respect to sales of other properties claimed to be similar, was incompetent where predicated wholly and solely on inspection of revenue stamps on deeds and public records. This holding would not disqualify them, however, as valuation witnesses in respect to the subject property, if otherwise qualified, nor prevent them from testifying as to prices paid for similar lands of which they had direct knowledge.

Under sub-head (b) it is claimed that there was no showing that the properties which were the subject of the sales inquired about, were in any way comparable to the subject property as to zoning, improvements. size, accessibility to major streets and roadways, availability of utilities, typography, etc.

An examination of the record discloses that some of the sales permitted under the general classification of sales of similar properties may have been remote. The record does not clearly show that such properties were so remote as to render such evidence incompetent. Some of the sales evidence included properties very close to the subject property, and being comparatively recent, were properly admitted in evidence.

The court permitted evidence of the sale of an eight-acre tract by county commissioners under sealed bids subject to a waiver of damages accruing from the construction of the Ohio Turnpike. We think this evidence was incompetent as it was in the nature of a public sale, with the property going to the highest bidder, subject to the conditions stated. Forced sales, or sales at public auction, are not competent evidence of sales of comparable or similar property because to be admissible at all, such

sales must be voluntary, the test being the price which a willing seller who is not obliged to sell will accept from a willing purchaser who is not obliged to purchase.

While evidence of sales so remote in time and so remote geographically as not to have a probative value on the issues of the value of the particular property sought to be taken should not be permitted, the trial judge must be allowed sound discretion in the admission of evidence of similar sales, being subject to reversal only where it is clear that there has been an abuse of discretion in admitting evidence so remote as to destroy the evidentiary value.

Under sub-head (c) it is the claim of appellant that the court permitted evidence of other sales on direct and redirect examination by the valuation witnesses testifying for the Commission, whereas it is claimed that such testimony under Ohio law can only be adduced on cross-examination and it is claimed that the admission of such testimony on direct and redirect examination constitutes prejudicial error.

In examining the record, we find that in one instance a witness for the Commission,—Mayer,—testified on direct examination as to the sale of twenty-five acres on Byrne Road, the record showing that the witness based his testimony on tax stamps affixed to the deed. We have previously ruled that such testimony predicated solely upon examination of tax stamps is inadmissible.

In another instance, the same witness testified to a sale of twenty acres immediately adjacent to the Ellis property, sold by First Toledo Corporation to the City of Toledo for $19,989.00. Upon objection by appellant and after argument in absence of the jury, the question was withdrawn. There was no request to instruct the jury to disregard the question and answer, and none was given. Inasmuch as the testimony given by this witness as to sale price of the property in question was precisely the same as that given by the appellee concerning the same property, no prejudice resulted.

Another witness for the Commission—Ruppert—testified on direct examination as to his knowledge concerning various other sales but did not at the same time testify as to the sale prices thereof so that no prejudice resulted from his direct testimony. Under these circumstances, we are not here presented with the question of the admissibility under Ohio law of sales prices of other comparable properties elicited on direct examination. However, we do have the question of admissibility of such evidence on redirect examination.

Counsel for both parties concede that there is a division of authority on the question of admissibility of sales prices on direct testimony of valuation witnesses and agree that the question has never been directly passed upon by the Supreme Court.

In DeRose v. Cleveland, 14 Abs 176, a case arising in this district, it was held as appears in the second and third paragraphs of the syllabus:

"2. A witness called to testify as to the value of real estate in an appropriation proceeding, may, after being qualified as an expert, state in his direct examination in chief that, he is acquainted with the values

of real estate in the vicinity of the property in litigation and that he knows the sale price of specific parcels, or tracts of similar quality and location, but cannot testify in chief what those sale prices were. See 15 O. Jur., Eminent Domain, 199.

"3. On cross-examination a witness qualified as an expert in the value of real estate may testify as to the sale price of property similar to that which is sought to be taken in an eminent domain proceeding, if it is first made to appear that the other property is similarly situated, that the sale was made in an open and fair market, sufficiently near in point of time and that other circumstances relative to value are similar."

In the later case of **Muccino v. B & O. Rd. Co., 33 Oh Ap 102,** Washburn, J., at **page 105,** states:

"As to whether evidence of sale of similarly situated property in the vicinity is admissible on direct examination, there is a conflict in the authorities; one line of decisions called the 'Massachusetts Doctrine' favors the admissibility of such evidence and the other known as the 'New York Doctrine' rejects such evidence."

Since the decision in that case, New York has, by statute, changed the rule so that it may be stated that in the New York as well as in the majority of jurisdictions, the sale price of similar property is now admissible on direct examination and not limited to cross-examination. It is stated in a note in 5 Nichols on Eminent Domain, page 278, as follows:

"In New York in the ascertainment of just compensation, the old rule which did not permit evidence of sales on direct examination has been changed by statute and evidence of sales prices is now admitted on direct examination, and not limited to cross or redirect examination, and undue delay and surprise in the trial is now avoided."

In Village of Lawrence v. Greenwood, 300 N. Y. 231 at page 236, 90 N. E. 2d, 53, the court said:

"The objection interposed by appellants on the hearing and now urged upon this appeal, is that expert witnesses called for the purpose of proving value may not testify on direct examination as to sale prices of other comparable property in the neighborhood because we are told such evidence presents collateral issues involving a variety of considerations. We are mindful that such was the rule—and such was the reason given for that rule—in Robinson v. New York Elev. R. R. Co. 175 N. Y. 219, 222 (citing other cases) * * *. We no longer adhere to the rule which was decisive in the Robinson case supra * * *."

We think that Ohio should eventually be in accord with the majority of the States which adopt the so-called Massachusetts Rule. We discuss this problem only because we are confronted with the question here of the competency of testimony as to sales of similar properties on redirect examination. Undoubtedly, witnesses who are cross-examined as to sale prices of comparable properties may be examined on redirect in respect of such properties. In the instant case, however, on redirect examination, testimony was given showing prices of properties not inquired into or testified to on cross-examination.

Upon due consideration we have reached the conclusion that no error,

prejudicial to the rights of the appellant, resulted from such redirect examination. See Lorain St. Ry. Co. v. Sinning, 17 O. C. C. Rep. 649.

Proceeding now to a consideration of assignment of error No. 8. This assignment of error relates to a special charge No. 2 wherein the jury was instructed concerning the weight to be given to testimony of witnesses. While there may be some doubt as to the correctness of a charge instructing the the jury to view with caution the testimony of witnesses having an interest in the cause, we find that counsel for appellant withdrew his objection to the charge when a change was made therein, as suggested by him, so that the issue raised by assignment of error No. 8 is not before us for determination.

Assignment of error No. 9 relates to a claimed error in the court's instruction on billboard, sign rights and abutters' rights. On this question the resolution of the Turnpike Commission contained a provision appropriating all rights to erect on any of the remaining lands of the owner billboard sign notices or posters and the court so charged.

At the time of the trial the Supreme Court had before it on appeal the case of Ellis v. Turnpike Commission, but since then has rendered a decision in favor of Ellis, holding that the Commission was without authority to acquire the billboard rights of the owner in the remaining lands, by reason whereof the appellant lost nothing by the charge complained of, the question now being moot. See Ellis v. Turnpike Commission, 162 Oh St 86. Consequently, the claimed error in this respect cannot now be sustained. As to the question of abutters' rights, other than billboard rights, the record shows that the court charged that compensation to which the owner is entitled included the fair value of all abutters' rights.

We proceed now to a consideration of assignment of error No. 10, to the effect that the verdict of the jury was contrary to the manifest weight of the evidence. The jury awarded $12,265.00 for the land actually taken, or approximately $1500.00 an acre. There were 8-1/10 acres in parcel 51-G, and 51-G-1 taken by the Commission. It is contended by appellant that for property in this vicinity and of the size taken, the verdict was a ridiculously low figure. It is claimed also that the natural advantages of the property in view of its location and accessibility to other parts of Lucas County; its size; typography; the neighborhood in which it is situated, are such as to require a much higher valuation for the land taken and for the damages to the residue.

The record shows as contended by plaintiff, that three of the Commission's expert witnesses, Rupert, Mayer and Schenck, placed a higher valuation on the land taken than that allowed by the jury, the witness, Schenck, placing a valuation of $16,170.00 on the land as against the award of the jury in the sum of $12,265.00.

It should be noted, however, that other witnesses for the Commission placed a valuation lower than that allowed by the jury and that there is a variation in the appraisals allowed for the damge to the residue. The record also shows that the valuation testimony adduced by the appellant placed a very much higher value on the land taken, as well as damage to

the residue, so that there was a wide variation between the valuations of the expert witnesses testifying for the respective parties.

In view of this evidence, the three judges are unable to agree that the verdict of the jury was manifestly against the weight of the evidence.

We proceed now to a consideration of Assignment of Error No. 11, in which it is claimed that the court erred in refusing to grant a motion for a new trial because of the misconduct of a juror. It appears that during the trial of the case and after some of the evidence had been received, but long before arguments of counsel or the charge of the court, a juror discussed the case with two persons, both strangers to the lawsuit, at the plant where all three were employed. To one of these employees he said, in reference to the case:

"**it is just a matter for the jury to decide how much was paid for the property to begin with, and whether or not Mr. Ellis was trying to profiteer.**" (emphasis added.)

Undoubtedly the juror was guilty of misconduct in discussing the case in violation of the court's instructions. His statement also shows a complete misconception of the applicable law and a prejudicial attitude toward Ellis. The fact that this juror was later elected foreman of the jury magnifies the possibility of baneful influence upon the jury which may have been a contributing factor in arriving at a verdict. In any event, it raises a serious doubt as to the juror's impartiality and possibly the impartiality of the other jurors in their consideration of the case. There is no denial of the misconduct of the juror, and no evidence to show whether it did or did not influence the other members of the panel.

The parties have cited many cases in support of their respective contentions but we have found no cases directly in point.

In the case of **Pearl v. Jones, 159 Oh St 137**, Middleton J. speaking for a unanimous court, said at page 140:

"The basic and underlying principle of the right of trial by a jury is that such trial shall be heard and determined by a jury of persons completely unbiased and uninfluenced by extrinsic considerations. It is universal practice in American courts to surround juries with safeguards to insulate them from influence of every kind. Any extraneous contact with a jury or any member thereof which would tend to influence the verdict in the slightest degree has been universally condemned."

Paragraph 3 of the syllabus of that case, reads:

"3. Where a juror during the trial of the case in which he is so serving, is offered any valuable thing to influence him with respect to the discharge of his duty as such juror and such offer is not reported to the trial jury until after the verdict is rendered and the jury is discharged, a motion for new trial must be granted."

We must, however, distinguish the Peart case from the instant case on the facts, because there is no evidence here that any of the appellee's agents had approached the juror and there is no evidence that his fellow-employees engaged the juror in a conversation designed to have a tendency to influence the conclusion of the juror.

We have reached the conclusion, however, that this incident of miscon-

duct of the jury foreman, when considered together with the other errors of a prejudicial nature discussed herein, such as the admission of evidence prejudicial to the rights of appellant, and the rejection of evidence to which appellant was clearly entitled, all prevented the appellant from having a fair trial and requires that a new trial be granted.

It is our conclusion, therefore, that the judgment be reversed and the cause remanded for further proceedings according to law. A journal entry may be drawn accordingly. Exceptions noted.

KOVACHY, J, concurs,

SKEEL, J, dissents. (See dissenting opinion.)

### DISSENTING OPINION
No. 4777. Decided February 17, 1955.

### OPINION
By SKEEL, J. (Dissenting)

This appeal, on questions of law, deals as has been stated by the majority opinion, with the value of the land of Ellis (designated in the proceedings as the Seventh Avenue tract) taken as part of the right of way for the Ohio Turnpike by the Ohio Turnpike Commission. The tract, in its entirety, consists of about fifty acres situated on the northwesterly side of the intersection of Detroit Avenue and the Anthony Wayne Trail. The Turnpike is taking approximately eight acres of the fifty-acre tract, running diagonally through the easterly, or perhaps more correctly described as the southeasterly end of the property with an extension of Devonshire Road which now dead ends on the northeast side of the Ellis property, through the

Ellis property to meet Crystal Road on the west.

The result of the Turnpike development leaves the Ellis Seventh Avenue property with 4-1/2 acres of land facing on Seventh Avenue, zoned for commercial use, with Seventh Avenue coming to a dead end at the Turnpike, where before it extended through to Detroit Road. The remaining property between the Turnpike and the 4-1/2 acre tract zoned for commercial purposes, is a triangular tract of 4-3/4 acres zoned for multiple family dwelling. To the north of the Turnpike running to the extension of Devonshire Road is a triangular piece of land consisting of a little less than three acres and the balance of the tract contains about 30 acres to the northwest of the said extension which is now zoned for multiple family dwellings. The southwesterly line of the property is the southwesterly line of the City of Toledo, except for a very small part at the southwesterly corner which is in the Village of Maumee.

The aerial views introduced in the record show the development around the property, both in Toledo and to the northeast, and in Lucas county to the southeast, and to the north, to be alloted and sparsely occupied with small suburban homes and a considerable expanse of farm land with a shopping center at the corner of Detroit Road and the Anthony Wayne Trail, and an occasional multiple family dwelling.

The property was purchased by Ellis in 1948 for $20,000.00, or at the rate of about $400.00 an acre. The verdict of the jury as compensation for the eight acres taken was $12,265.00 or about $1533.00 an acre, and damage to the residue of $32,081.50 or about $750.00 an acre, leaving Ellis with 42 acres of land and a judgment for $44,346.00 or about $9000.00 more than the average of the value and damage testified to by the Commission's expert witnesses.

This last fact is mentioned only because the defendant argues at length on the alleged fact that the verdict of the jury was less than that given as the opinion of damage by Turnpike Commission experts.

The majority opinion overrules all of the plaintiff's assignments of errors except Nos. 2, 5 and 6. As to assignment of error No. 11 dealing with the conduct of a juror, it is stated that when considered with the other errors held prejudicial to the rights of Ellis it must be included as one of the grounds for reversal.

I am in full agreement with the reasons for overruling assignments of error Nos. 1, 3, 4 and 7 to 10 inclusive, as stated by the majority opinion. As to assignment of error No. 11, the circumstances being one not induced by either party and there being no showing of prejudice to Ellis because of the juror's statement, it should be overruled.

Error No. 2 is sustained by the majority opinion because of the rejection of exhibits Nos. 12 to 15 inclusive, said exhibits being plans of some 600 multiple family dwelling units which Ellis testified he was considering as an improvement for that part of the Seventh Avenue property zoned for multiple family use.

There is no dispute but that the court did admit into evidence exhibit No. 11, which was the plan of street layout and building lines for the proposed apartments. The only thing excluded was the floor and elevation plans and specifications. There is no dispute in the evidence but that a property like the Seventh Avenue property of Ellis could be adapted and was suitable for commercial use in part and in part for multiple family dwellings. The witnesses for the Commission and for Ellis were given full opportunity to give their opinions as to its availablility for such uses and its value when considered for such purposes, together with all other purposes to which it might be reasonably adapted.

The elevation and floor plans for a project that was drawn up but progressed no further for a period of five years before the taking, could add little for the jury's consideration of the present value of the property, except, perhaps, that the proposed development was at least a little ahead of the then needs of the community. The question for the jury to decide was the value of the property taken and the damage to the residue when considered in the light of all uses for which it might be suitable, including the most valuable use to which, under all the surrounding circumstances, it was reasonably adapted at the time of the taking. **Sowers v. Schaeffer, 155 Oh St 454.**

The expert witnesses for both sides testified fully as to their opinions of the value of the land taken and the damage to the residue when considered for the best use for which they considered it was then reasonably available, there being some dispute only as to what such uses might be.

It was claimed by Ellis that the purpose for offering the plans was so that "the appraisers, the ones who will value the property, will be able to say they inspected the plans when they put a value on it. That is all we are asking."

If this be the purpose for which the exhibits were offered, the court was clearly right in rejecting such evidence as attempting to fix a value for a specific use independent of all other uses for which the property is suitable.

Ellis, under this assignment of error, relies upon **Cincinnati & Springfield Ry. Co. v. Longworth, 30 Oh St 108.** The facts of the Longworth case are clearly distinguishable. There, while the plat of a subdivision through which plaintiff was condemning a right of way, had not been recorded, yet several lots had been sold according to the plat before the appropriation proceedings had been filed. Here, the exhibits attempted to spell out proposed buildings that may never be built. Their admission into evidence could be effective only in fixing a proposed single special specific use to which the property might be devoted. And in this connection. it must be remembered that the proposed street layout and building lines as exemplified by Exhibit 11 and upon which the buildings, as shown by the tendered Exhibits, were to be built, was received into evidence thus fully complying with the rule of the Longworth case. The court did not commit error in excluding exhibits 12 to 15 inclusive.

Error No. 5 is concerned with a financial statement claimed to have been created or authorized by Ellis in which he set forth, together with his other assets and liabilities, the cost of the Seventh Avenue property and his estimate of its value (which on this exhibit was the same as the cost) it being claimed that the exhibit was created in the summer of 1951. The evidence supports the claim that the exhibit was created to be exhibited to the attorney for Ellis' wife as a basis for negotiating a propertly settlement between Ellis and his wife in a divorce case. The claim that the exhibit was a privileged communication is not, therefore, supported by the evidence. It was meant to be exhibited to the attorney for Ellis' wife and a copy of it was produced from his files. The dispute as to its authenticity, that is that it was created by Ellis or at his direction, was a jury question.

The purpose of presenting the exhibit was two-fold. First, as a declaration against interest, and second. as it might affect the credibility of Ellis as a witness when testifying to the value of his property taken for turnpike purposes. The property has but one value, and if in fact Ellis attempted to claim a value for one purpose and a wholly different value of other purposes, it certainly was admissibile under the circumstances of this case.

Error No. 6 is concerned with the qualifications of "Schenck" one of the expert witnesses for the Commission, to testify as an expert witness. Said assignment of error, together with assignment of error No. 7 also deals with the manner in which the consideration received in sales of comparable property within a reasonable time prior to the taking of a part of Ellis' property for turnpike purposes was obtained by this expert witness.

The record discloses that the witness had had many years experience in the field of real estate appraisals but had never before made a study of Toledo real estate values.

The jury was fully informed as to the witness' background. His ability to be helpful in seeking out the value of the Ellis property taken and the damage to the residue was for the consideration of the jury. The objection presented in error No. 6 goes to the weight to be given to the testimony of the witness rather than its admissibility particularly where the court has a wide discretion in admitting opinion evidence.

While there is some authority which seems to reject the right of an expert witness in making a study of real estate values to examine the record of deeds in sales transactions of comparable property and to ascertain the consideration paid for the property from Federal Revenue stamps attached to the deed, yet there seems no justification for such a rule. What more accurate information could thus be given as to the consideration for such transaction? In any event, whether the witness' testimony is credible, is a jury question and the court is without authority to take the place of the jury and reject the witness' opinion evidence under the circumstances here presented. Error No. 6 is not well taken.

This case is one in which the sole issue is the value of the Ellis property taken for turnpike purposes, and the damage to the residue because of such taking.

There is no question but that the jury's verdict is supported by credible evidence, —evidence to which Ellis could not take a valid objection and which was as legally admissible as that which he himself presented. The difference between the values claimed for the property involved; the part taken, and the damage to the residue by the contending parties, is so far apart that the jury could find no middle ground but was in a position where in its best judgment the evidence of one side or the other would have to be the basis for its verdict.

The appraiser, Jack Haley, called by Mr. Ellis, appraised the 4-1/2 acres zoned for commercial purposes fronting on Seventh Avenue at $97,700.00, that is about $22,000.00 an acre, and the remaining land zoned for multiple family dwellings at $444,600.00, or at a rate of about $10,000 an acre (in this last tract there was about 1/10 of an acre in the commercial zone) making a total value for the 50-acre tract of $542,300.00. The other two witnesses for Ellis are in substantial agreement with these figures and Ellis also accepted them as his opinion of the value of his land.

The Commission's witnesses put a total value on the 50-acre tract of from $75,000.00 to $90,000.00, that is about $4000.00 an acre for the commercially zoned 4-1/2 acre tract and $1500.00 an acre for the remaining 45-1/2 acres. The Commission's appraisers are in a measure, supported by actual sales transactions in this neighborhood and elsewhere in Toledo. Ellis purchased a 46-acre tract diagonally across Detroit Road, known as Storer Field, three years before the trial, for $870.00 an acre. It was then zoned in part for residence purposes but no difficulty was experienced in changing the zoning to whatever classification the owner desired, as is shown by the record.

The Town & Country Shopping Center directly across the highway from the Seventh Avenue property was purchased in two parcels, one being 4.7 acres for $4808.00 an acre, and 8.8 acres adjacent to it for about $6000.00 an acre.

438

The foregoing sales were in 1952, or less than one year from the date of this trial. Other sales between 1950 and 1953 of property zoned for residence use and multiple family dwellings and apartments in the Toledo area, developed that the highest price paid for acreage of this type was about $2,000.00. While sales as such, are not conclusive in fixing value because there are never two properties exactly alike, yet they are in fact a guide which an appraiser considers in determining what a willing seller would take when under no compulsion to sell, and a willing buyer not under the necessity of buying, would pay, or in other words, the appraiser's judgment as to the true market value of the subject property.

The verdict of the jury shows that they gave greater credence to the evidence of the expert witnesses for the Commission than to those presented by Ellis. This was a matter entirely within their province. The verdict also shows that if there was error in withholding elevation and floor plans of the proposed 600 multiple dwellings or in submitting the financial statement of Ellis or the evidence of Schenck, such error in no way influenced the verdict.

Sec. 2309.59 R. C., provides in part that where it is disclosed upon the record that substantial justice has been done the party complaining, an appellate court shall not reverse a judgment because some error may have intervened. This section is applicable here.

The judgment of the trial court should be affirmed.