Herbert G. KNOELL and Dorothy K. James, Executors of the Estate of Amelia Knoell, deceased, Plaintiffs,

v.

The UNITED STATES of America, Defendant.

Civ. A. No. 63–1022.

United States District Court
W. D. Pennsylvania.

Oct. 23, 1964.

Clyde E. Donaldson, Pittsburgh, Pa., for plaintiffs.

David Hill, Asst. U. S. Atty., Pittsburgh, Pa., for defendant.

WILLSON, District Judge.

This action for the recovery of an alleged overpayment of federal estate taxes arising out of the payment under protest of deficiency in federal estate taxes assessed by the Internal Revenue Service came on for trial non-jury. Plaintiffs are the executors of the estate of Amelia Knoell, who died testate on August 12, 1960, a resident of Penn Hills Township, Allegheny County, Pennsylvania. A federal estate tax return was filed with the District Director of Internal Revenue, Pittsburgh, Pennsylvania, on November 9, 1961. Included in the assets of the decedent's estate was a parcel of realty of approximately 4.538 acres situate on the northeast corner of Verona Road and Frankstown Road in the Borough of Penn Hills, Allegheny County, Pennsylvania. Plaintiffs elected to return all property as of its value at the date of death, and the property in dispute was

valued by the executors and returned for estate tax purposes at $42,300.00. The tax on the estate as determined by the executors in the sum of $1,999.63 was paid.

On audit the valuation of the property was increased to $130,000.00. A deficiency in the sum of $18,952.29 plus interest of $1,379.62 for a total of $20,-331.91 was assessed on February 1, 1963, by the Director. On February 11, 1963, the plaintiffs under protest paid the additional estate tax assessed as a result of this appraisal increase. A claim for refund was filed on May 22, 1963, and a statutory notice of disallowance was sent by certified mail on December 6, 1963. In the complaint the plaintiffs as executors demand judgment against the Government in the sum of $20,331.91, being the amount of federal tax overpaid with interest thereon from February 11, 1963, together with costs of suit.

The complaint also alleges that the adjusted value of certain stock was increased by the Director of Internal Revenue. However, the parties have entered into a stipulation that the shares of Wellington Fund should be valued at $14.09 per share, and that Dividend Shares, Inc., should be valued at $2.98 per share as of the date of death. This leaves only the value of the Penn Hills property at the time of death, August 12, 1960, in dispute.

As of the date of Amelia Knoell's death, the property was zoned partially for residential use and partially for commercial use. The entire frontage along Frankstown Road was zoned for commercial use. The frontage along Verona Road was zoned for commercial use for a depth of about 200 feet from the center line of the old road. The remainder of the frontage along Verona Road, about 570 feet, was zoned for residential use. The frontage along Frankstown Road, which was zoned for commercial use, was elevated above the rest of the land. On October 16, 1962, taxpayer sold approximately 3.55 acres of the property to the Verona Road Corporation for $100,-000.00. On May 15, 1963, the remainder of the property was sold to the Sun Oil Corporation for $40,000.00.

The statute and regulations involved in the instant controversy are part of the Internal Revenue Code of 1954, as follows:

"SEC. 2031. DEFINITION OF GROSS ESTATE

"(a) *General.*—The value of the gross estate of the decedent shall be determined by including to the extent provided for in this part, the value at the time of his death of all property, real or personal, tangible or intangible, wherever situated, except real property situated outside of the United States."

\*    \*    \*    \*    \*    \*

(26 U.S.C.1958 ed., § 2031.)

Treasury Regulations on Estate Tax (1954 Code):

"SEC. 20.2031–1 *Definition of gross estate; valuation of property.*

\*    \*    \*    \*    \*    \*

"(b) *Valuation of property in general.* [In part]. The value of every item of property includible in a decedent's gross estate under sections 2031 through 2044 is its fair market value at the time of the decedent's death. \* \* \* The fair market value is the price at which the property would change hands between a willing buyer and a willing seller, neither being under any compulsion to buy or to sell and both having reasonable knowledge of relevant facts \* \* \*."

\*    \*    \*    \*    \*    \*

(26 C.F.R., Sec. 20.2031–1).

Plaintiffs in establishing the fair market value of the property at the time of the decedent's death, that is, on August 12, 1960, offered the testimony of Herbert G. Knoell, one of the executors, and two real estate brokers of the Pittsburgh area. One, Leonard P. Kane, testified for the taxpayer and gave his opinion that the property had a value of $42,-300.00 as of the date of Mrs. Knoell's death. This, of course, is the same value as was included in the return. Undoubt-

edly as the record will show, Mr. Kane is a real estate broker of vast experience in the City of Pittsburgh, Allegheny County, Pennsylvania, in this district. He is fully qualified and has testified in this Court on many occasions.

The contention of the Government with respect to his testimony is that Mr. Kane gave no consideration whatsoever to the possibility of the property being entirely zoned for commercial use. Also, Government counsel says that the witness considered that the frontage along Frankstown Road is not suitable for commercial development even though it was zoned for commercial use because of the fact that the frontage was elevated above the rest of the lot. According to the Government, Mr. Kane's opinion as to commercial use was restricted to the property along Verona Road.

Plaintiffs then called a real estate broker, Mr. N. Theodore Flocos, who maintains his office in Penn Hills Township and near the property in question. He had a somewhat different viewpoint as to the commercial possibilities of that part of the property along Frankstown Road. He gave the property a fair market value of $51,200.00 as of the date of Mrs. Knoell's death. The Government's contention with respect to his testimony was that although he felt that the highest and best use of the property was as commercial property, he gave no consideration whatsoever to the possibility of a zoning change from residential to commercial.

In defense, the Government called two witnesses. One was William P. Jones, chairman of the Board of Commissioners of Penn Hills Township, who testified that had a request for a zoning change from residential to commercial been made prior to Mrs. Knoell's death, in his opinion, it would likely have been granted.

At the trial, the Government stated that it had not had the Knoell Homestead in Penn Hills appraised by a real estate expert prior to April 14, 1964, that is, just a few weeks prior to the trial.

The Government offered the testimony of one Robert C. Shipley, Jr. This witness had not seen the house or the Knoell property until he commenced preparing for the instant trial, nor had he seen the property prior to the ravine being filled in, nor before the new road called Graham Boulevard Extension had been opened and constructed through the property giving it frontage on a third road, and before the Verona Road had been widened. Also say plaintiffs, the witness had not viewed the property before the opening of the East Hills Shopping Center and the phenomenal increase in the traffic around the Knoell Homestead.

At the trial and after hearing the qualifications of Mr. Shipley, as well as the investigation he made prior to coming to Court, it was my feeling that his testimony was of no value whatsoever on the issue in this case. The law of this circuit is clear as laid down in United States v. 13,255.53 Acres of Land, etc., 158 F.2d 874, 876 (3rd Cir. 1946), where the Court held that if a man is to qualify as an expert witness he has to have actual personal knowledge of the facts affecting the land at the time of taking. Mr. Shipley did not qualify as an expert witness.

The only real contention to be discussed is that made by the Government in which it is claimed rezoning possibilities were in existence at the time of the decedent's death which were not taken into account by the executors and their expert witnesses. But it is clear in this case that the witnesses did value the property as to its commercial use and to its possibilities for further commercial use. They did say, however, that their opinion was arrived at without expectation that the property was to be rezoned. In that connection, it is to be noticed that the evidence shows that some years prior to Mrs. Knoell's death an application for rezoning a portion of the property from residential to commercial use was refused by the Local Board. A portion of this property was sold on October 16, 1962. This was over two years and four

months from decedent's death. The other portion of the land was sold on May 15, 1963, two years and nine months after the decedent's death. In the mind of Government's counsel, the selling price of the two lots necessarily indicates that the value in the return was understated, but this Court agrees with the contention made by plaintiffs' counsel that this position in the first place entirely disregards the wide publicity given to the so-called "Master Plan." It appears that the Pittsburgh Regional Planning Association in 1957 prepared what is known in this area as the Master Plan for development of the various municipalities and areas one of which covered Penn Hills Township. This plan was known, of course, to persons in the real estate business. In this plan a proposed roadway was to run through the middle of the Knoell property and had in fact depressed the desirability of the land from most any viewpoint, as it divided the property into what plaintiffs contend would have been two "slivers" of land. Further, says counsel for the plaintiffs, it was not until the erection of the East Hills Shopping Center more than a year after decedent's death which brought about a great increase in traffic that the commissioners permitted the rezoning of the Knoell property for commercial purposes. It is important and should be emphasized that at the time of her death there was no rezoning application pending. As a matter of fact, the rezoning was not authorized until January 20, 1962.

Finally, this Court in the trial of this non-jury case was confronted with a situation in which fully qualified witnesses testified on behalf of plaintiffs. They had as a basis of their value what a willing buyer would pay a willing seller. In the opinion of the Court, they considered all the necessary factors in arriving at their respective opinions, including the highest and best use of the property. With regard to the Government's contention that plaintiffs' experts failed to take into account the rezoning possibilities, the proposition, if true, only goes to the weight of the testimony and not to its admissibility. It should be stressed that they considered the commercial usage to which the property was adaptable. This necessarily includes zoning. Again the Government's contention is that the two experts for plaintiffs failed to use the possibility of rezoning as enhancing the value they put on the property as of the date of death. The point to be stressed in this connection is that both witnesses considered rezoning a possibility, but rejected any probability of the property being rezoned in arriving at their opinion. It seems clear to me the Government takes the position that they ignored rezoning. I find and conclude that they considered it, but did not regard rezoning as being a proper factor to be considered in arriving at their value or even influencing it. Each witness had a different reason for rejecting the possibility of rezoning as having a separate and distinct addition to the value of the property. In my opinion those reasons were valid. In the opinion of the Court, the testimony of Messrs. Kane and Flocos was credible and overcame the presumption of the validity of the reassessment.

The Court has read the various decisions cited by Government counsel with regard to the contention that the plaintiffs' experts failed to take into consideration the prospect of a zoning change. All but one of the decisions cited in the Government's brief are land condemnation cases. This Court has no disagreement with these decisions for the reason that the plaintiffs' experts in this case did consider but rejected rezoning as creating an enhanced value of the property.

In conclusion, the Court has not been furnished with a copy of the trial testimony. However, at the close of the case I had a firm conviction that plaintiffs' evidence should prevail. I requested briefs on the Government's contention that plaintiffs' experts failed to take into account rezoning in determining fair market value. This matter has been carefully considered, and it is believed that the Government's position on this

point is without merit in the light of the evidence in this case.

■ As indicated, I have found the fair market value of the property to be $51,200.00, which was the value placed upon it by Mr. Flocos. This will require a recomputation of the amount due plaintiffs by reason of overpayment of estate taxes. Counsel for the parties will in due course prepare an order for judgment. This memorandum will embrace findings of fact and conclusions of law, as permitted under Rule 52.