Per Curiam:
In this action to recover Federal income taxes paid by plaintiffs for the calendar year 1957, the principal issue is the proper tax basis which should be used in computing the long term capital gain realized from the sale by plaintiffs of 6 acres of land in 1957. On August 25, 1943, plaintiff Ann Nields Garstin inherited from her father .30.49 acres of real estate in New Castle County, Delaware. *552 In 1957, plaintiffs sold 6 unimproved acres out of the parcel and in their income tax return for that year reported the adjusted basis of such land as $15,000. Upon an audit of the return, the Internal Revenue Service assessed a deficiency because of adjustments made in five separate items on the return. In proceedings before our trial commissioner, plaintiffs have acquiesced in the adjustments made with respect to four of the items, but the action of the Commissioner of Internal Revenue in decreasing the reported basis of the real estate sold from $15,000 to $2,865.80 is contested by plaintiffs and the issue was tried on the merits.
At the threshold, we are met with defendant’s contention that the trial commissioner applied an erroneous standard of law in ruling that defendant’s witness was not qualified as an expert to express an opinion as to the fair market value of the real estate. Generally, a preliminary ruling as to the qualifications of a witness to testify as an expert is discretionary with the trial judge and is conclusive unless clearly shown to be erroneous as a matter of law. 20 Am. Jur., Evidence, § 786, p. 659-60; II Wigmore on Evidence, 3rd ed., § 561, p. 641, et seq.; Stillwell and Bierce Manufacturing Company v. Phelps, 130 U.S. 520 (1889).
The record shows that the expert witness tendered by defendant had not seen the subject property until 6 months after this suit was filed and more than 20 years after August 25, 1943, the relevant valuation date. He had never bought or sold any real estate in New Castle County, either for himself or as a broker for others. He had no personal familiarity with the value of such land or with the value of comparable land in the county in 1943. Although he made an appraisal of the 6 acres in September 1962, he had never previously appraised any real estate in the county or in the State of Delaware, except for some property located at Rehoboth Beach, situated in a different county and about 100 miles away from the subject property. The trial commissioner rejected the testimony of the witness but gave defendant an opportunity to present the testimony of another witness who could qualify as an expert. It declined to do so. In the light of this record, w© find that defendant has not shown that the trial commissioner applied an erroneous *553 standard of law and we hold that he did not abuse his discretion in rejecting the proffered testimony. The commissioner might well have permitted the witness to testify and considered the witness’ qualifications in determining the weight to be accorded his testimony. However, the commissioner’s action is supported by decisions in analogous cases. In a recent tax case decided October 23, 1964, the same person, whose testimony was rejected by the trial commissioner, was offered as an expert witness on real estate values in Allegheny County, Pennsylvania. The court ruled that he was not qualified to express an opinion on the subject. Herbert G. Knoell, et al. v. United States, 236 F. Supp. 299 (D.C.W.D.Pa. 1964). See also Love v. United States, 141 F. 2d 981 (8th Cir. 1944); United States v. Johnson, 285 F. 2d 35 (9th Cir. 1960), and United States v. 13,255.53 Acres of Land, et al., 158 F. 2d 874 (3rd Cir. 1946).
As previously indicated, the principal question for decision is the fair market value of the real estate in issue as of August 25, 1943. After hearing the testimony of the witnesses and considering all the evidence presented, the commissioner found that the fair market value of such property on the pertinent date was $1,800 per acre or a total of $10,800. This was a finding upon a question of fact. Upon a review of the record, we conclude that the finding is adequately supported by the evidence and that defendant has not overcome the presumption accorded to the correctness of the finding under our Rule 66. Wilson v. United States, 151 Ct. Cl. 271 (1960) and Robert E. Davis v. United States, 164 Ct. Cl. 162 (1964). Therefore, we have adopted the commissioner’s findings, and it follows that plaintiffs are entitled to recover on the ground that the proper tax basis for the real estate which is the subject of this action is $10,800. Pursuant to Rule 47(c), the case is remanded to the trial commissioner for determination of the amount of recovery.
FINDINGS OP PACT
The court, having considered the evidence, the report pi Trial Commissioner William E. Day, and the briefs and. argument of counsel, makes findings of fact as follows:
*554 1. The plaintiffs, Geoffrey S. Garstin and Ann N. Garstin, are now and were during the year 1957 husband and wife. They are citizens of the United States, and their mailing address is 5603 Kennett Pike, Wilmington 7, Delaware.
2. On or before April 15, 1958, the plaintiffs filed a 1957 joint Federal income tax return with the District Director of Internal Revenue for Delaware. The return showed taxable income of $32,982.10 with a net tax payable of $9,829.64. The latter amount was duly paid on or before April 15,1958.
3. In the 1957 joint Federal income tax return filed by the plaintiffs, they reported the following items:
(a) A long-term capital gain from the sale of 6 acres of land (hereinafter sometimes referred to as the subject property) in the amount of $4,361;
(b) A capital-loss carryover in the amount of $73.02,-
(c) A $1,940.84 repairs deduction from income from rents;
(d) A $720 depreciation deduction from income from rents; and
(e) A credit for dividends received credit in the amount of $1,033.29.
4. Upon an audit of the plaintiffs’ Federal income tax return for the year 1957, representatives of the Commissioner of Internal Revenue assessed a deficiency in the amount of $4,085.67, on the basis of an increase in taxable income from $32,982.10 to $41,138.42 and in net tax payable from $9,829.64 to $13,915.31, by making the following adjustments to the items listed in finding 3 above:
(a) A long-term capital gain, from the sale of the 6 acres of land, in the amount of $16,495.20, computed by decreasing the reported basis of said land from $15,000 to $2,865.80;
(b) A capital-loss carryover in the amount of $1,073.02, computed by adding $1,000 to the loss;
(c) Disallowance of the deduction for repairs;
(d) A deduction for depreciation from income from rents of $71.62, a decrease of $648.38, computed by reducing the basis of the property from $24,000 to $3,581.08; and
(e) A credit for dividends received credit of $1,025.79, a decrease of $7.50, as dividends of $187.50 from International Nickel Company were not subject to the credit.
*555 On or before December 27, 1960, tbe plaintiffs paid tbe sum of $4,085.67, representing tbe asserted deficiency in 1957 Federal income tax, and the sum of $648.03, representing interest thereon, to tbe District Director of Internal Revenue for Delaware.
5. On April 14,1961, the plaintiffs filed with tbe District Director of Internal Revenue for Delaware a claim for refund of “$4,085.67 or such other amt. as is legally reeuNdable” of 1957 Federal income tax and interest, based upon an overpayment of such tax resulting from the failure of the Commissioner of Internal Revenue to accept the figures stated in finding 3 (a), (c), and (d).
■6. By letter dated January 15, 1962, the District Director of Internal Revenue for Delaware notified the plaintiffs of the disallowance, in full, of their claim for refund for the year 1957.
7. In their petition before this court, the plaintiffs based their claim on the alleged erroneous adjustments made by representatives of the Internal Revenue Service, described in paragraphs (a), (c), and (d) of finding!. At the trial before the commissioner, the plaintiffs' abandoned their contention regarding the repairs deduction and the depreciation deduction and accepted the defendant’s determination as to these matters. The plaintiffs continue to contest in this action the proper basis which should be used in computing profit on the sale of the 6 acres of land.
8. On August 25, 1943, plaintiff Ann Nields Garstin inherited from her father, John P. Nields, 30.49 acres of real estate in Christiana Hundred, New Castle County, Delaware, part of which real estate is the subject property of this action. The will of John P. Nields, deceased, was probated in the Office of the Register of Wills at Wilmington, Delaware. Neither Geoffrey S. Garstin nor Ann N. Garstin were executors of such will. They took no part in the probate of the will and had no responsibility in the valuation of the estate of John P. Nields.
9. After an audit by the State Tax Department of Delaware and after an appraisal by Mr. J. B. Shelnutt of Wilmington, Delaware, the value of the real estate (land and buildings) was listed as $26,500, as of August 25,1943, the *556 date of Mr. Nields’ death, for Delaware inheritance tax purposes.
■10. On December 6, 1950, the real estate was transferred, without consideration, by Ann N. Garstin to Ann N. Garstin and Geoffrey S. Garstin, her husband, as tenants by the entirety.
11. On November 22, 1957, the plaintiffs sold the subject property, consisting of 6 acres of bare land, to Baird C. Brit-tingham and his wife for a gross consideration of $19,604. The expense of this sale was $243, the net proceeds thus being $19,361. In the Federal income tax return of the plaintiffs for the calendar year 1957, the sale of the 6 acres of land was reported, and the adjusted basis of the 6 acres of land was there reported as $15,000.
12. The property which Mrs. Garstin inherited from her father, of which the subject property was a part, is in an area of New Castle County, known generally as the Kennett Pike area or as the Centerville area. In 1943 the area was, and it is now, covered almost entirely by large country estates. The limits of this area of comparable properties were defined by the plaintiffs’ expert witness, Mr. Carroll W. Griffith, Jr., a Wilmington, Delaware, real estate businessman, as being generally Brandywine Hundred (County) on the east, Lancaster Pike on the west, the Delaware-Pennsylvania State line on the north and northwest, and Green-ville on the south.
No other witness, qualified to give opinion evidence as to the value of real estate in the pertinent area, testified. The qualifications of one witness called to testify on behalf of the defendant were offered as a basis for his opinion testimony but, upon objection as to his qualifications as an expert on real estate values in the area, his testimony was rejected although it is contained in the record under an offer of proof. Thereafter, the defendant was accorded the opportunity to present the testimony of an additional qualified expert but it declined to do so.
13. According to Mr. Griffith, the landscaping and general development of the area have generally remained the same from 1943 to the present. It was his opinion that the highest *557 and the best use on August 25, 1943, for the total 30.49-acre tract, and for the 6-acre tract within it, was “for residential estate development.” He testified that the area had been extensively occupied by the du Pont family and by their associates in the company bearing that name. The history had been that these people sold land in the area only when they liked someone and when they wished to favor him by allowing the purchase.
The neighborhood surrounding the 30-acre tract consisted of estates with veiy expensive houses. The famed Winterthur Museum is about 1 mile distant, lying towards Wilmington. Mr. Griffith testified that the topography of the 30-acre tract was quite similar to the land generally in the area. The land goes down a slight rolling hill which, in his opinion, is desirable for residential building. The 6-acre tract was described by him as having 400 feet of road frontage on Kennett Pike and as having “high land gently sloping down into lower land with a growth of trees and a little stream bed flowing through it for drainage purposes for rainwater. It was an ideal, perfect piece of land. * * *”
14. In August 1943 the area was served with utilities. There was a gas line, and electricity was used for cooking and for lights. Sewerage was by a septic system established on the property, and a well provided an adequate supply of water. The area had good bus service to Wilmington, the bus stopping at the intersection adjacent to the subject property.
15. Mr. Griffith was of the opinion that the value of the land in this area increased between 1936 and 1943, although there was a paucity of arm’s-length sales to demonstrate the point. He seemed to rely on his knowledge of the real estate market in the adjacent areas also. In 1943, wartime building restrictions prohibited the construction of the type of home found in this area but Mr. Griffith believed that if land had been “for sale,” it would have been purchased by those foreseeing the removal of the restrictions and anticipating a great demand for real estate.
:X6. Mr. John Draper Brown, Jr., and his wife, purchased approximately 19.198 acres of land, with improvements, lo *558 cated at the intersection of Kennett Pike and Pyles Ford Road, for a consideration presumed to be $22,000, based on the Federal documentary stamps found on the deed. There were $22 of canceled Federal revenue stamps on the deed. The property was conveyed to the Browns on June 29,1936.
At the time the Browns purchased this property, the documentary stamp tax was $0.50 per $500 of consideration. Revenue Act of 1926, ch. 27, Schedule (A) (8), 44 Stat. 9, 101, as amended by the Revenue Act of 1932, ch. 209, sec. 725, 47 Stat. 169, 275.
17. Mr. Joseph H. Maston purchased approximately 53.267 acres of realty, fronting on Kennett Pike, Old Kennett Road, and Pyles Ford Road, for a consideration presumed to have been $20,000, based on the Federal documentary stamps on the deed. This would be approximately $375 per acre. There were $20 of canceled Federal revenue stamps on the deed. The property was conveyed to Mr. Maston on October 7,1938.
At the time Mr. Maston purchased this property, the documentary stamp tax was $0.50 per $500 of consideration. Revenue Act of 1926, ch. 27, Schedule (A) (8), 44 Stat. 9, 101, as amended by the Revenue Act of 1932, ch. 209, sec. 725, 47 Stat. 169, 275, as amended by the Revenue Act of June 29, 1937, ch. 402, 50 Stat. 358.
18. Mr. John Draper Brown, Jr., and his wife, purchased approximately 10.73 acres of unimproved realty, located on Old Kennett Road between Kennett Pike and Owls Nest Road, for a consideration presumed to have been $9,000, or approximately $838 per acre, based on the Federal documentary stamps on the deed. There were $9 of canceled Federal revenue stamps on the deed. The property was conveyed to the Browns on December 12,1939.
At the time the Browns purchased this property, the documentary stamp tax was $0.50 per $500 of consideration. Int. Rev. Code of 1939, ch. 31, sec. 3482, 53 Stat. 424, 425.
19. Mr. Joseph K. Walters and his wife purchased approximately 9.45 acres of land, with a small stone house, located on Campbell Road between Kennett Pike and Centerville Road, for a consideration presumed to have been $10,000, *559 based on the Federal documentary stamps on the deed, or approximately $1,000 per acre if the improvements had no value. There were $11 of canceled Federal revenue stamps on the deed. The property was conveyed to Mr. and Mrs. Walters on May 7, 1943.
At the time they purchased this property, the documentary stamp tax was $0.55 per $500 of consideration. Int. Rev. Code of 1939, ch. 31, sec. 3482, 53 Stat. 424, 425, as amended by the Revenue Act of 1941, ch. 412, sec. 505 and sec. 521(a) (24), 55 Stat. 687, 706-707. This sale, however, was made pursuant to a court order and could not, therefore, be considered as a sale without compulsion to sell.
20. Mr. Edward H. Porter purchased approximately 10 acres of land, with improvements (not described), located on Centerville Boad between Old Kennett Boad and Pyles Ford Boad, for a consideration presumed to have been $10,500, or approximately $1,050 per acre, assuming the improvements had no value. The presumed consideration is based on the value of the Federal documentary stamps found on the deed. There were $11.55 of canceled revenue stamps bn the deed. The property was conveyed to Mr. Porter on December 20, 1945.
At the time Mr. Porter purchased this property, the documentary stamp tax was $0.55 per $500 of consideration. Int. Rev. Code of 1939, ch. 31, sec. 3482, 53 Stat. 424, 425, as amended by the Revenue Act of 1941, ch. 412, sec. 505 and sec. 521(a) (24), 55 Stat. 687, 706-707.
21. Mr. Griffith considered the following transactions to be comparable sales upon which, in part, he based his opinion as to the fair market value of the subject property:
(a) In April 1930, William Foulk purchased 6 acres of land at $1,000 per acre on Twaddell Hill Boad, northeast of Centerville. In Mr. Griffith’s opinion, the land was not as good as the subject property as it was more hilly and it was not as convenient to bus transportation.
(b) On December 16,1935, II. P. Robertson purchased 26 acres of land for a consideration of $27,500. The land, located on Pyles Ford Boad and Kennett Pike, adjoins the subject property. In Mr. Griffith’s opinion, it is not as de *560 sirable as the subject property because it slopes down to a low, rough-brush section, and some of it is wet.
(c) In May 1936, Judge Percy Nields sold 20.2 acres of land to Thomas Brittingham for $25,000, or approximately $1,240 per acre, with frontage on Center Meeting Hoad, which is adjacent to, but back of, the subject property.
(d) The sale of the subject property in November 1957, upon which this case is predicated.
(e) In March 1958, W. W. Laird purchased 49.3 acres of land at a price of $147,783, or approximately $3,000 per acre, located directly across Kennett Pike from the subject property.
(f) In 1960, Mr. Laird also purchased 40 acres of land on Owls Nest Road at $5,000 per acre. This land is adjacent to the land described in (e) above.
(g) In 1963, Mr. Lickle purchased 8 acres of land on the south side of Pyles Ford Road for $64,000, or $8,000 per acre.
Mr. Griffith testified that “based on those comparables and what I have known about this district my opinion is that on that date of August, 1943, the firm, sound value was $1,800 per acre. * * *”
22. The fair market value of the subject property on August 25,1943, was $1,800 per acre, or $10,800 for the 6-acre tract.
CONCLUSION OF LAW
Upon the foregoing findings of fact, which are made a part of the judgment herein, the court concludes as a matter of law that plaintiffs are entitled to recover and judgment is entered to that effect. The amount of the recovery will be determined pursuant to Rule 47 (c).
In accordance with the opinion of the court, a memorandum report of the commissioner and a stipulation of the parties as to the amount of judgment, it was ordered on January 17,1966, that judgment be entered for the plaintiffs for $2,298.16.