# Tiffany v. Delaware, Lackawanna & Western Railroad Company, Appellant.

*Eminent domain—Evidence—Witnesses—Incompetent witnesses —Relevant evidence—Cross-examination.*

1. In eminent domain proceedings to assess damages to a tract of land caused by the condemnation of part thereof for railroad purposes, a witness who has had no direct knowledge of sales of land in the neighborhood cannot qualify himself to testify as to the market value of the land by examining the public records of conveyances of land in the neighborhood, for the purpose of ascertaining the considerations named in the deeds.

2. In such cases an expert witness as to the value of plaintiff's land may properly be asked on cross-examination what the property would bring at public sale, as such cross-examination bears upon the competency of the witness to testify as to the market value of the land.

3. After a witness has testified in chief as to the damages caused by the taking of land by condemnation, a large latitude should be allowed on cross-examination so as to include any pertinent question that would enable the jury to place a fair estimate upon the witness's testimony.

4. A witness should not be permitted to testify as to the market value of land where his information of value is based solely upon the productiveness of the land.

Argued March 18, 1918. Appeal, No. 113, Jan. T., 1917, by defendant, from judgment of C. P. Susquehanna Co., Aug. T., 1912, No. 193, on verdict for plaintiff, in case of Jennie L. Tiffany v. The Delaware, Lackawanna

& Western Railroad Company.  Before BROWN, C. J.,
POTTER, STEWART, FRAZER and WALLING, JJ.  Reversed.

Appeal from award of board of viewers in condem-
nation proceedings.  Before LITTLE, P. J.

The opinion of the Supreme Court states the fact.

Verdict for plaintiff for $3,168.10 and judgment there-
on.  Defendant appealed.

*Errors assigned* were rulings on evidence.

J. H. Oliver, with him D. R. Reese, for appellant.

J. M. Kelly, for appellee.

OPINION BY MR. JUSTICE STEWART, October 7, 1918:

In many of its features this case closely resembles that
of Hall versus the same defendant in which the opinion
has just been handed down.  Both were appeals from
judgments entered in proceedings for the assessment of
damages for appropriation of land under the right of
eminent domain, and the questions here raised, with a
single exception, are questions discussed in the former
case.  The assignments of error presented in each for our
consideration relate in the main to the admission and
rejection of evidence upon the trial.  Plaintiff is the
owner of a farm in Susquehanna County containing 135
acres; the defendant company appropriated out of it 32
acres and a fraction for the purpose of straightening and
improving its line of track in July, 1912.  The jury of
view awarded plaintiff $2,250; on appeal therefrom the
jury rendered a verdict of $3,168.10, which included cer-
tain damages for delay of payment.  The chief distinc-
tion between the cases lies in the fact that in the Hall
case the controversy was over special damages claimed
by plaintiff because of the marketability of the land for
building sites, which it was claimed was destroyed by the
appropriation of the lands taken by the railroad out of
the whole tract, while here the question was the extent

of the depreciation of the market value of plaintiff's property not distinguished by any special or peculiar advantage over similar land in the same neighborhood. Notwithstanding the distinction, the assignments of error in this case, for the most part, raise the same questions that were considered in the other—the qualification of the witnesses called by the plaintiff to testify as to the value of the tract before and after the appropriation of a part. It will not be necessary to review at length all the assignments of error. A review of several of them will be quite sufficient to state the general principles of law applicable in such a case, and we will endeavor to state them in such a way as it will be made apparent which, if any, of the assignments show transgression.

The first witness called by the plaintiff was John J. Reigel, a civil engineer and surveyor of twenty-five years' standing. He was offered as an expert on land values to express an opinion as to the market value of plaintiff's lands before and after the appropriation. Some time before—it does not appear how long—in a condemnation proceeding for the railroad's appropriation of part of the farm adjoining the plaintiff's, this same witness was called to testify. He was there asked his opinion as to the market value of the land considered, and he declined to answer, giving as his reason that he did not know the value of the land in the vicinity. As a witness here his attention was directed to the answer he made in that case, and this question follows: "And up to 1912, up to that time, did you know of the sale of any farm land in that vicinity?" He answered, "No, not distinctly. I have looked up the records since then and found what sales were made, and I know the character of the land." An objection followed to the competency of the witness which was overruled with this observation by the court, "That is the one way the witness may have obtained information regarding the values." To this the witness replied, "Yes, I did. I know of sales and I looked up the

records so far as I could and ascertained the prices and areas, areas mainly; and when I heard the testimony concerning some of them, it removed the doubt I had in mind even in the Jankovshi affair." The doubt referred to could have meant nothing less than the doubt he had previously felt as to his own competency to express an opinion. On cross-examination he was asked, "Name me the farms you knew and had any knowledge of prior to 1912, of sales prior to 1912, where you knew the acreage of the farms sold and the price obtained in this vicinity and upon which you base your judgment in this case." He answered, "I can't give you one that I can now recall that I knew of in 1912." This question followed, "Did you learn of them since 1912?" He answered, "Yes, and I knew of sales that were made, and I simply lacked the information of the acreage, or the price paid in dollars and cents." The incompetency of this witness is too manifest to call for discussion. His testimony shows not only an utter lack of personal knowledge or familiarity with those things which qualify a witness to express an opinion as to market value in estimating damages in such cases, but it discloses an effort on the part of the witness to qualify himself as a witness by resorting to the public records to learn therefrom what sales of land had been made in the neighborhood, when made, and the prices obtained therefor, a most objectionable proceeding from every point of view. In the first place, the public records speak for themselves. If in this case they proved anything proper to be inquired of, they should have been produced in evidence; the witness was not competent to testify as to what he as an individual had learned from them. But it is manifest they could have proved nothing as to the market value of the land, which was the sole inquiry in the case. The consideration named in a deed concerns no one but the parties to the instrument; as to others, it is a matter of no consequence whether correct or not, and at best is only prima facie. The result would be, if admitted in a case like this, the

opening up of as many collateral inquiries as there were deeds examined. We are decidedly of opinion that the objection to this witness's testimony should have prevailed.

The next witness to whose testimony we shall refer is Fred Bennett. On cross-examination he was asked, "If this farm had been set up at public sale as of the date 13th July, 1912, with due notice to all who may wish to buy it, that it was going to be sold as of about that time or date, so that every one who might wish be present and bid, in the open market, and the property was sold after such notice, what in your judgment would it bring at such a sale?" It was objected to "because it is not what it would bring at a sale, it is what the market value is. We object to it as not cross-examination, immaterial, irrelevant and incompetent." In view of the estimate given by the witness in his examination in chief, it is difficult to understand the force of this objection, and yet the court disallowed the question, merely saying, "I don't think that is a fair test on cross-examination." The refusal of the court to allow the cross-examination is assigned for error. In Davis v. Penna. R. R. Co., 215 Pa. 581, followed by Rea v. Pittsburgh & C. R. R. Co., 229 Pa. 106, it is said, "After a witness has testified in chief, the largest latitude should be allowed on cross-examination, ......in fact, any and every pertinent question may be put to him on cross-examination which will enable the jury to place a fair estimate on his testimony as to the damages sustained by the plaintiff by the construction of the road through the latter's premises." The learned judge in his ruling not only failed to observe the distinction between the restrictions imposed where the examination is in chief and where the cross-examination has been entered upon, but he wholly disregarded the fact that the question he disallowed was in strict conformity with the rules of evidence. It was error to reject it. Here, as in the case to which we have above referred, and in which the opinion has just been handed down, there was

a singular failure on the part of the court, counsel and witnesses to distinguish between public and private sales as aids in the determination of market values. It would be strange indeed under such circumstances if the jury escaped like error. Private sales may, and, in certain cases do furnish a test of market value, and it sometimes happens that they are the only tests available: but, for the very reason that they are private as distinguished from sales at public outcry where property is sold at a time and place appointed by public announcement, upon terms made publicly known and competitive bidding is invited and expected, it cannot be said that they reflect the market value of the property sold in like degree with public sales. As a general rule, none are interested in a private sale except the parties to the particular transaction: they alone know the consideration and inducement that led to the sale and purchase, and, for all that the public is given to know the considerations upon one side and the other that influenced the transaction may not have been such as the law recognizes as affecting or reflecting market value. At best, a private sale where its terms and conditions are known only to the parties to the contract, is but an expression of an opinion by the parties concerned therein as to the market value of the particular property the subject of the sale, and they alone can speak from personal knowledge of the particulars of the sale. The distinction between the two kinds of sales has a double significance; it calls for consideration in determining the competency of the witness to express an opinion as to the market value,—a question which is always for the court—and, if admitted, for this purpose, it calls for consideration in connection with the weight to be allowed it by the jury.

We very briefly notice several of the remaining assignments. One relates to the ruling of the court in disallowing a question put to the witness Wright on cross-examination. He was asked the market value of the land remaining after the appropriation. He replied, in the

neighborhood of ten dollars. He was then asked the market value of the thirty-two acres that had been appropriated. This under objection was disallowed. Here again the rule we have above cited, allowing on cross-examination to embrace any pertinent question that would enable the jury to place a fair estimate upon a witness's testimony, was disregarded, and so in several other of the assignments. Another striking departure from the only correct way of estimating damages in such case is to be found in the testimony of the witness, Tingley. The only basis for the opinion he gave as to the market value of the land was its productiveness before the defendant appropriated it, and the only basis for his opinion as to the value after was based on a situation and condition he found three or four years after when its productiveness, as he testifies, had been destroyed because of the absolute neglect of the property by the owner during the intervening years, which extended to the buildings and facilities as well as the land. "An estimate of value which is not a market value, but a value based upon productiveness alone, should be withdrawn from the jury": White v. Penna. R. R.Co., 229 Pa. 480.

Another assignment of error relates to the rejection of evidence on cross-examination which was intended to elicit the price plaintiff paid for the land some five years before. This would call for consideration had not the several questions been withdrawn. As we read the record a withdrawal followed each time the question was asked. It is not therefore now before us. Furthermore, the purpose of the question then asked was not disclosed. We only know from the assignment and argument the purpose of the question. It is unnecessary to discuss the case further. We have restated the rule governing the testimony in such cases, which if followed will avoid a repetition of the errors pointed out on another trial. For the reasons we have indicated, the judgment is reversed and venire facias de novo is awarded.