874

## UNITED STATES v. 13,255.53 ACRES OF LAND IN BURLINGTON & OCEAN COUNTIES, N. J., et al.

### No. 9060.

Circuit Court of Appeals, Third Circuit.
Argued Oct. 14, 1946.
Decided Dec. 31, 1946.

Abraham Natovitz, of Jersey City, N. J., for appellants.

Dwight D. Doty, of Washington, D. C. (David L. Bazelon, Asst. Atty. Gen., Joseph Kraemer, Sp. Asst. to Atty. Gen., and Walter Goldberg, Sp. Atty., Department of Justice, of Newark, N. J., and John F. Cotter, Atty., Department of Justice, of Washington, D. C., on the brief), for appellee.

Before ALBERT LEE STEPHENS, GOODRICH, and McLAUGHLIN, Circuit Judges.

McLAUGHLIN, Circuit Judge.

This condemnation matter involves 163 acres of land out of a total of 13,255.53 acres acquired by the government for the enlargement of the Fort Dix military reservation. The proceedings were commenced October .22, 1940. Thereafter in accordance with the New Jersey practice three commissioners were appointed to val-

ue the lands. On or about April 18, 1945 the commissioners filed their reports making assessments and awards of damages for the taking of the various parcels. The nine appellants, owners of twelve tracts which comprised the 163 acres, dissatisfied with the allowances for their property, appealed to the District Court where the question of value was tried before judge and jury. At the conclusion of the owners' case the Court held that the appellants had not presented any evidence which warranted the matter being passed upon by the jury and so dismissed the appeal.

The first of the five witnesses for the owners was Winfield H. Eldridge, a civil engineer. He said that the lands involved were originally part of a 10,000 acre tract owned by one Clarence R. Pope. Beginning in 1930, 1200 acres of this, including the 163 acres, were developed by Mr. Pope as Pinehurst Estates. Mr. Eldridge who had laid out the development identified the property on the map and told generally about the roads in the area. He could not say whether the developer had sold any lots in Pinehurst Estates after 1933 and "don't know anything about his sales." It was agreed that 141 structures had been erected on the development. These apparently were still in existence at the time of the trial. Mr. Eldridge described the structures as mostly residences (from two to six rooms) of the weather-board type, with some of log cabin style and including two or three stores. Two of the appellant owners, Messrs. Schwartz and Fredericks, testified. Schwartz had purchased his parcel of 1.95 acres in 1930 for $197. Within the next three or four years he erected a log cabin on those premises. He had not been on his property since 1937 and did not know if his cabin was still in existence in 1940. Fredericks bought two plots in 1931, a one acre tract for $195. and 1¼ acres for $275. The government stated it had no objection to Schwartz telling of the amount he paid but did not concede that such sale back in 1930 was comparable. Evidence as to the cost of the cabin to Schwartz was not allowed, on the ground that it did not establish its true value at the taking date.

The remaining two witnesses were real estate experts, Richard Woodward and Arthur N. Cutler. Though both of them said they had examined Pinehurst Estates, their examinations seem to have consisted of observations while driving through the development on various occasions as Woodward stated, "to get to the place I wanted to go to." Woodward in the course of forty-eight pages of testimony was afforded the fullest opportunity for giving the reasons for his opinion of the market value of the various premises as of the time of acquisition by the government in October 1940. He said that he had spot-checked the Pinehurst Estates sales records which had been furnished him by counsel for the appellants. He found the last sale had been made in 1932. He stated that "The development died, as I understand it, approximately 1933." There were about 573 sales, totalling about 800 acres. In forty per cent of these the buyers defaulted. He did not know how many buildings were on the Pinehurst tract. The first time he was on the property was in 1940. He said there had been no "building" there since 1933 that he knew of. In addition to his spot-check of sales he formed his estimate from what he knew of a development in Lakehurst, located in the same general area. That project did not start until 1943, and that land was not sold but merely rented. He also had in mind his work as appraiser for the Federal Housing Authority in Burlington and Ocean Counties which commenced July 1, 1941. In addition, he based his judgment on his general real estate experience but admitted that he had made no sales in Ocean County and none in Burlington of the same type as the land under consideration. The District Judge, who had affirmatively assisted throughout the exhaustive examination of the witness in the effort to develop, if possible, an evidential foundation for the opinion of the witness on the market value of the particular land, finally said, "I am afraid, Mr. Natowitz, that I have gone as far as I can, and I shall sustain the objection of the government."

Mr. Cutler's idea of value stemmed from much the same sources as Woodward's,

namely, a spot-check of the Pinehurst Estates sales, his experience and "good common sense" and the 1943 Lakehurst rental development. The Trial Judge continued his aid in the effort to obtain "something more than a guess," from this witness also, but when it became apparent that Mr. Cutler had no other justification for his opinion, the Court said that "I have not yet been sufficiently satisfied that he has qualified as an expert for the purpose of testifying to this particular type and quality of land in question. I shall so rule." The witness, later recalled to the stand, had some vague recollection of a sale in 1933, which he thought was comparable. The Court rejected this as too remote.

The only other evidence in the appellants' case was an offer of proof of what the government had paid several owners of Pinehurst Estates parcels, in settlement after condemnation. In those instances condemnation petitions and declarations of taking were filed and the government entered into possession. Thereafter settlements were made without hearings or trials. The offer was excluded on the government's objection.

The appellants here contend that the District Court erred: (1) In refusing to accept the testimony of the real estate experts; (2) in refusing to permit the evidence of Messers. Schwartz and Fredericks of what they paid for their property to go to the jury; and (3) in not allowing the offer of proof of what the government had paid in settlement for several tracts concerned in the same condemnation proceedings.

 The fair market value of the land at the time of taking by the government in October of 1940 is of course the primary issue in this appeal. This question of substantive right, namely, the measure of compensation, is grounded on the Constitution of the United States and federal law controls. United States v. Miller, 317 U.S. 369, 63 S.Ct. 276, 87 L.Ed. 336, 147 A.L.R. 55; United States v. Certain Parcels of Land, etc. et al. 3 Cir., 144 F.2d 626. The competency of an expert opinion witness is for the Trial Judge and his decision is con-

clusive, unless clearly shown to be erroneous in matter of law. Stillwell etc. Mfg. Co. v. Phelps, 130 U.S. 520, 9 S.Ct. 601, 32 L.Ed. 1035; United States v. Certain Parcels of Land et al., 3 Cir., 145 F.2d 374, 375, 159 A.L.R. 1. New Jersey is in accord with this. Robbins v. Thies (Err.& App., 1936), 117 N.J.L. 389, 398, 189 A. 67.

 For a witness to give his opinion on market value of land, it must appear that he has actual personal knowledge of the facts affecting the land at the time of taking. With that background such person is assumed to be in a position to fairly estimate the value of the property. Recent sales of the particular premises or of similar parcels, generally speaking, are the most desirable standard but in the absence of such sales, valuation can still be arrived at by opinion evidence. Montana Railway Co. v. Warren, 137 U.S. 348, 354, 11 S.Ct. 96, 34 L.Ed. 681. As the Court said in Love v. United States, 8 Cir., 141 F.2d 981, at page 984:

"There is no exact rule as to the amount of knowledge a witness must possess in order to be permitted to testify as to the value of land. If it is shown that he knows the land and its surroundings, and that he has an opinion based upon something more than conjecture as to its value, he may be permitted to state his opinion. 'After a witness has testified that he knows the property and its value, he may be called upon to state such value. The means and extent of his information, and therefore the worth of his opinion, may be developed at length on cross-examination.' * * * We can not say, however, that either Love or Kerth was shown to have such knowledge of the land in suit and its surroundings, or of its value or of the value of comparable lands in the vicinity, as to establish his qualifications as a matter of law. Neither can we say that the trial judge abused his discretion in excluding the opinions of these witnesses as to the value of the land at the time of the taking in 1940. That the trial judge might have admitted their opinions or that we might think he should have admitted them, does not demonstrate that he was without discretion to exclude them."

The New Jersey rule is more rigid. See Jersey City v. Meyer (Err.& App.,1928), 106 N.J.L. 391, 150 A. 354. In re Proceedings to Acquire Land v. Brokaw (Err.& App.,1930), 107 N.J.L. 110, 111, 112, 150 A. 387.

■ Even under the broad federal rule which governs, the Trial Judge did not abuse his discretion in refusing to permit the opinion evidence offered. Neither Woodward or Cutler gave any indication of possessing special knowledge of the premises at the time of its acquisition by the United States in October of 1940. There is no evidence from either of them that while passing through Pinehurst Estates on their way to inspect other properties, they really saw any of the appellants' land. Those trips themselves only started in the Fall of 1940. They give no testimony of any structures on the particular premises and are very obscure with reference to the building situation in the area. Nor do they mention roads, utilities, schools, etc. The most they have to say is that Pinehurst Estates is generally sandy pineland. Their right to qualify as experts rested on: a spot-check of the defunct Pinehurst Estates sales from 1930 to 1932 of which admittedly forty per cent were never consummated; a nearby rental development which· did not start until three years after the present proceedings; Woodward's employment with the F.H.A. which began in 1941; their many years in the real estate business and "common sense," as Cutler put it. Neither Woodward or Cutler had any sales in Ocean County. Woodward had no similar sales in Burlington County. Cutler had developed tracts of land in Camden and Burlington Counties.

We are not at all convinced that a sound basis for judging the value of the property was established by either of the experts. While undoubtedly experienced real estate experts, their conclusions as to the premises involved did not spring from their own knowledge of them but, primarily from clearly incompetent factors. Permitting those conclusions to go to the jury would not have been a fair and safe way to ascertain appellants' damage. Certainly it was within the Trial Court's discretion to exclude the testimony.

■ Appellants next urge that the testimony of Schwartz and Fredericks of the prices they paid for their land in 1930 and 1931, should have gone to the jury. That evidence had not been objected to by the government who reserved the question of its remoteness. There was no attempt by these witnesses to connect their purchase prices with the 1940 values. The inference if any from what Schwartz said, was that the property had depreciated. Other testimony that there had been no sales in the Pinehurst Estates tract after 1932 and that the development had "died" in 1933 strongly indicates, contrary to appellant's assertions, that the land had decreased in value by the Fall of 1940 from the prices paid by Schwartz and Fredericks in 1930 and 1931. As the record stands the evidence was too remote and was rightfully excluded from the jury.

■ The final point is that the District Judge wrongfully barred the owners' offer of proof of the amounts paid by the government for other property condemned in the same proceeding. We find no error in that ruling. Testimony of the price paid by the condemnor for other tracts is not admissible. United States v. Foster, 8 Cir., 131 F.2d 3, 5; United States ex rel. v. Reynolds, 5 Cir., 115 F.2d 294. Cf. Five Tracts of Land, etc. v. United States, 3 Cir., 101 F. 661. Though federal law governs this problem it is at least questionable that the New Jersey decisions hold otherwise. See Curley v. Jersey City, 83 N.J.L. 760, 763, 85 A. 197, 43 L.R.A.,N.S., 985; State Highway Commission v. Lally (N.J. Sup.1929), 147 A. 487, 488.

Affirmed.