**UNITED STATES of America, Appellant,**

v.

**60.14 ACRES OF LAND, MORE OR LESS, Situate in WARREN AND McKEAN COUNTIES, STATE OF PENNSYL-VANIA, and Arthur W. Seibel, et al.**

**No. 15313.**

United States Court of Appeals Third Circuit.

Argued Nov. 5, 1965.

Decided June 24, 1966.

Roger P. Marquis, Chief Appellate Section, Land and Natural Resources Division, Washington, D. C. (Edwin L. Weisl, Jr., Asst. Atty. Gen., Gustave Diamond, U. S. Atty., Robert E. Tucker, Asst. U. S. Atty., Pittsburgh, Pa., on the brief), for appellant.

Joseph J. Malizia, Emporium, Pa. (John G. Gent, Erie, Pa., on the brief), for appellees.

Before STALEY and FREEDMAN, Circuit Judges and COHEN, District Judge.

FREEDMAN, Circuit Judge.

On January 18, 1963 the government condemned land in Warren and McKean Counties, Pennsylvania for the Allegheny River Reservoir Project. Included in the condemned area was a residence owned by Carl F. Laubach and Florence Laubach, his wife, in Corydon Township, Warren County, Pennsylvania. At the trial before a jury on June 15 and 16, 1964 the owners were their only witnesses; the husband testified that in his opinion the fair market value of the property at the time of the taking was $32,000 and his wife gave similar testimony. The jury rendered a verdict for the owners in the amount of $26,000. The United States has appealed.

■ Appellant complains that the testimony of the husband should have been stricken out because it did not go to fair market value at the time of taking but instead was based on a fair return on his investment. We are satisfied on a careful review of the record that the complaint is not well founded. While the husband did not testify with a precision which would have rendered such an argument frivolous, nevertheless, his evidence read in its ordinary meaning and not artificially was adequate for consideration by the jury under the accepted standard of what a willing buyer would pay in cash to a willing seller of the property.[1]

A more important issue is raised by the trial court's ruling that the government's only witness, Minsinger, who was presented as an expert, was not qualified to give his opinion of the value of the property.

Minsinger testified and was cross-examined at length on voir dire regarding his competency. The record shows that he holds a Pennsylvania real estate broker's license; he maintained a real estate office, apparently in Pittsburgh, doing a general real estate business from 1937 until 1946, when he began devoting himself to real estate appraisals. To qualify for this work he took courses in real estate at the University of Pittsburgh and attended real estate appraisal classes, conferences and seminars conducted by the American Institute of Real Estate Appraisers. He has made appraisals for various public bodies having the power of condemnation and for private corporations and has testified in the Allegheny County courts. He has appraised property as far east as Carlisle, Pennsylvania and as far west and south as West Virginia and as far north as one hundred miles beyond Pittsburgh, Pennsylvania. He is a past president of the Western Pennsylvania Association of Residence Appraisers. He is a member of the American Institute of Real Estate Appraisers, which requires ten years experience and the passing of an examination and has twelve to fifteen members in Western Pennsylvania.

Minsinger had not made any appraisals in the Warren County area and did not know the market nor did he have any knowledge regarding comparable sales there until the United States Corps of Engineers contracted with him in early 1961 to appraise some 200 properties in the Allegheny River Reservoir Project. To perform the service required by his contract he visited Warren

1. United States v. Miller, 317 U.S. 369, 374, 63 S.Ct. 276, 87 L.Ed. 336 (1943); United States v. Smith, 355 F.2d 807, 809 (5 Cir. 1966).

County, obtained from the courthouse records a list of all sales of real estate for the period beginning in 1955 and investigated these sales by talking to the owners, and inspected and took photographs of the properties. He ascertained the purchase prices shown by the tax stamps on the recorded deeds of the properties, and verified them by inquiry of the grantees. His inquiries necessarily were circumspect and he could not say positively in each case that the seller might not have been under some compulsion to sell. Using the information he thus obtained, he compiled a sales catalogue which consisted of approximately 150 parcels. He testified that as a result of his investigation he became familiar with the sales and sales prices in Warren County.[2]

On February 12, 1962, almost a year prior to the condemnation and almost two and one-half years prior to the trial, he inspected the Laubach property for the specific purpose of appraising it. He went through the interior of the buildings and examined their condition and their utilities and appointments. He also took photographs of the property which were identified as government exhibits. He testified that they substantially represented the condition of the buildings on the date of condemnation, less than a year later. He also familiarized himself with the area in which the property was located. When he came to make his appraisal of the property he had his catalogue before him and winnowed out the 150 properties to four which he considered comparable. These, according to the records, had been sold for $8,850, $9,100, $10,500 and $8,500. He made allowances for the differences between these comparable properties and the Laubach property and arrived at his appraisal of it. Thereafter he spent a great deal of time in the vicinity on his assignment as appraiser and was able to bring down his observations from the time of

the original inspection in February, 1962 to the date of the taking on January 18, 1963. The government offered to prove that he valued the Laubach property at $13,000. This opinion evidence was excluded on the ground that the witness was not qualified.

 It is of course well established ↳· that the determination of the competency of an expert witness lies generally in the discretion of the trial judge and that his decision will not be interfered with unless such discretion is abused or its exercise is manifestly erroneous. Salem v. United States Lines Co., 370 U.S. 31, 35, 82 S.Ct. 1119, 8 L.Ed.2d 313 (1962); Stillwell and Bierce Manufacturing Co. v. Phelps, 130 U.S. 520, 9 S.Ct. 601, 32 L.Ed. 1035 (1889); Arnold v. Loose, 352 F.2d 959, 962 (3 Cir. 1965); United States v. 13,255.53 Acres of Land, 158 F.2d 874 (3 Cir. 1946). See 2 Wigmore, Evidence (3d ed. 1940), § 561. In the present case, however, what is involved is not whether the trial judge in his discretion accurately evaluated the factual circumstances relating to this particular witness's competency but rather the correctness of a general rule of law which he believed was binding and which would render an entire class of witnesses incompetent. Such a ruling of law, though an element in the decision on competency, is, of course, not restricted to the narrow review which applies to the exercise of discretion. E. g., United States v. Featherston, 325 F.2d 539, 543 (10 Cir. 1963); Roth v. Bird, 239 F.2d 257, 261–262 (5 Cir. 1956); Hickey v. United States, 208 F.2d 269, 278 (3 Cir. 1953), cert. denied, 347 U.S. 919, 74 S.Ct. 519, 98 L.Ed. 1074 (1954); Bratt v. Western Air Lines, 155 F.2d 850, 853 (10 Cir. 1946), cert. denied, 329 U.S. 735, 67 S.Ct. 100, 91 L.Ed. 635.

There can be no doubt that Minsinger was thoroughly familiar with the Laubach property [3] and the current value of real estate in the area in which it was

---

2. The activities described in his testimony related also to real estate in the adjoining McKean County.

3. In this regard the case is far different from United States v. 13,255.53 Acres of Land, 158 F.2d 874 (3 Cir. 1946), relied

situated. He obviously was well trained and experienced in the business of valuing real estate. Indeed, the court below acknowledged his general qualifications, but barred his testimony because he had acquired his knowledge of values in the area as a result of a search and study of sales which had already occurred, rather than contemporaneously with the transactions in the course of his business as a real estate broker. The court relied for this view on the Pennsylvania case of Tiffany v. Delaware, L. & W.R.R. Co., 262 Pa. 300, 303, 105 A. 101 (1918), followed in Shuck v. West Side Belt R.R. Co., 283 Pa. 152, 155, 128 A. 832 (1925), which held that a witness may testify as a real estate expert on the basis of the hearsay information of other sales in the area which he has acquired contemporaneously in the course of his business in following the trend of market conditions, but is not qualified if he has acquired all his information retrospectively from public records and interviews. See also Struthers v. Phila. & Delaware County R.R. Co., 174 Pa. 291, 34 A. 443 (1896).

This was the Pennsylvania rule applicable to Pennsylvania eminent domain proceedings at the time of trial. A week after the trial, however, Pennsylvania adopted the Eminent Domain Code of 1964[4] which made substantial changes in the Pennsylvania law, and whose provisions regarding evidence (Title VII) immediately became applicable in proceedings then pending. (§ 302). It authorized an expert to testify on direct examination "as to the valuation of the property on comparable market value" (§ 705(2)), including "[t]he price and other terms of any sale or contract to sell * * * comparable property made within a reasonable time before or after the date of condemnation." (§ 705(2)(i)). The draftsmen expressly stated that they intended by this provision to permit evidence of comparable sales on direct as well as cross-examination of the

expert and that it should be admissible as evidence of market value as well as for credibility purposes (see Comment to § 705(2) (i)). The liberalizing purpose of the Act is shown by another provision (§ 705(6)) that a valuation expert, if otherwise qualified, "shall not be disqualified by reason of not having made sales of property or not having examined the condemned property prior to the condemnation, provided he can show he has acquired knowledge of its condition at the time of the condemnation." The comment underscores this purpose, saying, "many highly competent appraisers do not make sales and have not made sales on property." The statute has therefore undermined for future cases in Pennsylvania the foundation on which the Tiffany rule rested.

But even prior to the adoption of the Eminent Domain Code we do not believe that in a proceeding under the federal power of eminent domain the Pennsylvania courts would have applied the rule of the Tiffany case to bar a witness such as Minsinger. The Pennsylvania law of eminent domain has long reflected a conception of market value which emphasized the intangible true worth of the property. The Pennsylvania courts spoke of comparable sales as irrelevant to market value, and they were therefore excluded both as substantive evidence of value and as corroboration of an expert's opinion. In a leading early case the Pensylvania Supreme Court said of such testimony: "[I]t does not disclose the public and general estimate which * * * is a test of value. * * * The fact as to what one man may have sold or received for his property, is certainly a collateral fact to an issue, involving what another should receive, and, if in no way connected with it, proves nothing. It is, therefore, irrelevant, improper, and dangerous. Not so with a market value." East Pennsylvania Railroad v. Hiester,

---

on by the Court below. There a witness was held to lack the qualification of an expert because he did not have adequate

knowledge of the tract which he sought to value

4. Act of June 22, 1964, P.L. 84, 26 Purdon's Pa.Stat.Annot., § 1–101, et seq.

40 Pa. 53, 55–56 (1861).[5] Such data could be referred to only in cross-examination, to test the accuracy of the expert's opinion (East Pennsylvania Railroad v. Hiester, supra, p. 56), and then only if he in fact had relied upon the sale in forming his opinion.[6] It is not difficult to perceive the close connection between Pennsylvania's conception of market value and its rule that the expert who testified to valuation must have a general awareness and responsiveness to the climate of local opinion, of which comparable sales are merely sporadic expression.

The federal conception of market value differs from that of Pennsylvania; it is intimately related to selling prices in the market, and evidence of comparable sales therefore has always been admissible both as substantive evidence and to support a witness' opinion.[7] Indeed, it has been described as the best evidence of market value.[8] We may therefore conclude that even prior to the Eminent Domain Code the Pennsylvania courts would have permitted a witness such as Minsinger to testify as an expert if they had been called upon to determine the market value of real estate under the more objective federal standard.

We do not, however, decide this case by determining whether the Pennsylvania courts would have applied the decisions on which the trial judge relied in a proceeding in which the federal rule of market value prevails. The competency of witnesses in an eminent domain proceeding in a federal court is not determined by conformity to state law. On the contrary, Rule 71A(a), added to the Federal Rules of Civil Procedure in 1951, brought the procedure in such cases under the Rules. Rule 43(a) provides that both the competency of witnesses to testify and the admissibility of evidence are determined by applying the most liberal of these standards: (1) the federal statutes, (2) the rules of evidence "heretofore applied in the courts of the United States on the hearing of suits in equity", (3) the rules of evidence of the state in which the United States court is held.[9]

This rule was framed in its present form because the draftsmen thought it impractical at the time to write out a system of evidence for the federal courts,[10] and also because there was some doubt that the rule-making power extended to evidence.[11] The make-

5. See also United States v. Certain Parcels of Land, etc., 144 F.2d 626 (3 Cir.1944); Dempsey, Evidence of Prices in Pennsylvania Eminent Domain Proceedings, 43 Dick.L.Rev. 5, 6–13 (1958).

6. See Snitzer, Pennsylvania Eminent Domain (1965), pp. 394–5; Dempsey, Evidence of Prices in Pennsylvania Eminent Domain Proceedings, 43 Dick.L. Rev. 5, 13–23 (1958).

7. E. g., United States v. Smith, 355 F.2d 807, 809 (5 Cir. 1966), Maris, Cir. J.; United States v. 84.4 Acres of Land, 348 F.2d 117, 119 (3 Cir. 1965); United States v. Johnson, 285 F.2d 35, 40 (9 Cir. 1961); see 5 Nichols, The Law of Eminent Domain (Rev. 3d ed. 1962), § 21.3.

8. E. g., United States v. Featherston, 325 F.2d 539, 542 (10 Cir. 1963); Onego Corporation v. United States, 295 F.2d 461, 463 (10 Cir. 1961); Baetjer v. United States, 143 F.2d 391, 397 (1 Cir. 1944),

cert. denied, 323 U.S. 772, 65 S.Ct. 131, 89 L.Ed. 618.

9. Rule 43(a) reads: " * * * All evidence shall be admitted which is admissible under the statutes of the United States, or under the rules of evidence heretofore applied in the courts of the United States on the hearing of suits in equity, or under the rules of evidence applied in the courts of general jurisdiction of the state in which the United States court is held. In any case, the statute or rule which favors the reception of the evidence governs * * *. The competency of a witness to testify shall be determined in like manner."

10. See, e. g., Preliminary Report on Advisability and Feasibility of Developing Uniform Rules of Evidence, by Committee on Rules of Practice and Procedure (1962), pp. 12–16.

11. Green, The Admissibility of Evidence Under the Federal Rules, 55 Harv.L.Rev.

shift nature of Rule 43(a) has presented a number of problems, the chief of which is the meaning of the second category,— the rules of evidence theretofore applied in suits in equity. If it was to be limited to specific equity precedents the category would be of little significance, for such precedents are few and inadequate. Moreover, they would establish no independent principles, for in evidence as elsewhere the maxim applies that equity follows the law.[12] Inevitably, therefore, to look to equity has meant to absorb the principles which apply at law. But beyond this, whatever ambiguities the Rule might have, the draftsmen went out of their way to make clear their intention that the admissibility of evidence should be treated liberally. They left the administration and development of their policy to the federal courts, knowing that the law of evidence is largely judge-made and that in most of the states the rules of evidence were in a continuing course of judicial development and refinement. Now that it is clear that the rule-making power over procedure includes evidence (see Hanna v. Plumer, 380 U.S. 460, 85 S.Ct. 1136, 14 L.Ed.2d 8 (1965)), the draftsmen's intention is to be given the fullest scope. The federal system of evidence therefore is not to remain in a straitjacket, static and unchangeable, while fresh state precedents modernize state law, nor should the degree of advance in the federal courts be limited by the backwardness of an individual state. The essential function of the rules of evidence is a practical one, like all procedure, and it would be undesirable as well as impossible to narrow the second category of Rule 43(a) by forbidding the federal courts from participating equally with state courts in the development of the law of evidence. To prevent the creation of precedents merely because one did not already exist would frustrate the liberal purpose of the Rule, and in the light of equity's historic role in alleviating the rigidity of the common law, would render ironic the reference to proceedings in courts of equity. The second category of Rule 43(a) therefore must be read to go beyond specific, already existing decisions, and as referring to the general system of evidence reflected in the body of judicial and scholarly writings on the subject.[13]

In accord with this view the federal decisions have come increasingly to reflect the modern rule that all relevant and material evidence is admissible unless there is a sound, practical reason for barring it.[14] Thus, it has been said that the courts will assume that a well-established federal rule of evidence at law was also applied on the equity side even though no equity decision so declared, because this would accord with the maxim that equity follows the law and also "with just ordinary good sense." Carlson v. Chisholm-Moore Hoist Corporation, 281 F.2d 766, 771–772 (2 Cir. 1960), cert. denied, 364 U.S. 883, 81 S.Ct. 172, 5 L. Ed.2d 104. So also evidence was admitted because it was necessary and

197 (1941); Clark, Foreword to Symposium on the Uniform Rules of Evidence, 10 Rutgers L.Rev. 479, 481 (1956). Cf. Hanna v. Plumer, 380 U.S. 460, 85 S. Ct. 1136, 14 L.Ed.2d 8 (1965).

12. See United States Equity Rule 46 (1913); Jenkins v. Eldredge, Fed.Cas. No.7,266, 13 Fed.Cas. pp. 462, 498, 3 Story 181 (C.C.Mass.1844); Harmer v. Gwynne, Fed.Cas.No.6,075, 11 Fed.Cas. pp. 551, 553, 5 McLean 313 (C.C.Ohio 1851); 1 Wigmore, Evidence (3d ed. 1940), § 4, p. 15.

13. See, e. g., Hope v. Hearst Consolidated Publications, Inc., 294 F.2d 681, 95 A.L.R. 2d 213 (2 Cir. 1961), cert. denied, 368 U.S. 956, 82 S.Ct. 399, 7 L.Ed.2d 388

(1962); Monarch Insurance Company of Ohio v. Spach, 281 F.2d 401, 410–411 (5 Cir. 1960).

14. Dallas County v. Commercial Union Assurance Co., 286 F.2d 388, 393–397 (5 Cir. 1961); Mutual Life Ins. Co. of N. Y. v. Bohlman, 328 F.2d 289, 293–294 (10 Cir. 1964); Price v. United States, 335 F.2d 671, 676–677 (5 Cir. 1964). See Clark, Foreword to Symposium on the Uniform Rules of Evidence, 10 Rutgers L.Rev. 479, 481 (1956). See also Rule 7 of Uniform Rules of Evidence; Comment, Federal Rule 43(a): The Scope of Admissibility of Evidence and the Implications of the Erie Doctrine, 62 Col.L.Rev. 1049, 1051–61 (1962).

trustworthy, under a court-created exception to the hearsay rule even though it was not a "business record" or an "ancient document", or "any other readily identifiable and happily tagged species of hearsay exception." Dallas County v. Commercial Union Assurance Co., 286 F.2d 388, 398 (5 Cir. 1961). And we recently held that a guilty plea to a charge of reckless driving was admissible in a civil suit despite a state statute forbidding it. Rain v. Pavkov, 357 F.2d 506 (3 Cir. 1966). Nor is the rule any different because the question involves the scope of an exception to an exclusionary rule rather than the exclusionary rule itself.[15]

Where the competency of a witness is involved, Rule 43(a) provides that the question is to be determined "in like manner" as the admissibility of evidence. In such cases the application of the second category raises a fresh difficulty. The Competency of Witnesses Act (R.S. 858, 28 U.S.C. § 631 (1940)), since repealed,[16] which was in effect when the Rule was adopted, applied to suits in equity and required that questions of competency be decided under state law. If the time standard of the Rule—"heretofore applied"—were read literally, the Act would have drained the second category of substantial meaning by making it the same as the third category and thereby reducing to two the three categories of admissibility. This would be contrary to the express purpose of the draftsmen that Rule 43(a) modify the Competency of Witnesses Act.[17] The federal courts therefore increasingly have applied to competency of witnesses the liberal principles that have been developed regarding the admissibility of evidence regardless of state law restrictions.[18]

These principles which determine the admissibility of evidence on practical considerations make clear the standard required for the competency of an expert. "To warrant the use of expert testimony * * * two elements are required. First, the subject of the inference [which he is to draw from the facts] must be so distinctively related to some science, profession, business or occupation as to be beyond the ken of the average layman, and second, the witness must have such skill, knowledge or experience in that field or calling as to make it appear that his opinion or inference will probably aid the trier in his search for truth." Jenkins v. United States, 113 U.S.App.D.C. 300, 307 F.2d 637, 643 (1962), quoting McCormick, Evidence (1954), § 13.[19] In Jenkins, the court went on to say: "The principle to be distilled from the cases is plain: if experience or training enables a proffered expert witness to form an opinion which would aid the jury, in the absence of some countervailing consideration, his testimony will be received." (p. 644). Applying this rule of competency, there is no doubt that Minsinger, who is a qualified real estate appraiser and had substantial knowledge of local values and the property involved, was competent to testify. The court below, however, ruled otherwise, fundamentally because he lacked contemporaneous knowledge of comparable sales.

It is true that a real estate expert, unlike the usual expert, is not called on to express an opinion on hypothetical facts which he is asked to as-

---

15. Dallas County v. Commercial Union Assurance Co., 286 F.2d 388 (5 Cir. 1961); Carlson v. Chisholm-Moore Hoist Corp., 281 F.2d 766, 771–772 (2 Cir. 1960), cert. denied, 364 U.S. 883, 81 S.Ct. 172, 5 L.Ed.2d 104.

16. It was repealed in 1948 on the ground that its subject matter was governed by Rule 43(a). See H.R.Rep. No. 308, 80th Cong., 1st Sess., A238 (1947).

17. Advisory Committee Note to Rule 43(a).

18. Een v. Consolidated Freightways, 120 F. Supp. 289 (D.N.D.1954), aff'd, 220 F.2d 82 (8 Cir. 1955); United States v. Brunner, 200 F.2d 276, 280 (6 Cir. 1952).

19. See also Salem v. United States Lines Co., 370 U.S. 31, 34–37, 82 S.Ct. 1119, 8 L.Ed.2d 313 (1962); Spring Co. v. Edgar, 99 U.S. 645, 657, 25 L.Ed. 487 (1878); Steward v. Atlantic Refining Co., 240 F. 2d 715, 718 (3 Cir. 1957).

sume to be true without having any personal information on the subject. The practical reason for this is that there are no universal values of real estate, which is peculiarly bound by its situs. A real estate appraiser, no matter how well qualified he may be in general, therefore, is not an expert on the value of property which is unknown to him or is situated in an area which is unfamiliar to him. United States v. 13,-255.53 Acres of Land, 158 F.2d 874 (3 Cir. 1946). Instead the essential elements of the real estate expert's competency include his knowledge of the property and of the real estate market in which it is situated, as well as his evaluating skill and experience as an appraiser.

■ This does not, however, mean that one who has the necessary training, experience and skill and has familiarized himself retrospectively with the necessary data cannot form an expert opinion of value which is substantially superior to that of the average man and therefore useful to the jury.[20] All opinion evidence of market value is to some extent inherently speculative (see Kimball Laundry Co. v. United States, 338 U.S. 1, 6, 69 S.Ct. 1434, 93 L.Ed. 1765 (1949); United States v. Miller, 317 U.S. 369, 374–375, 63 S.Ct. 276 87 L.Ed. 336 (1943)), for it seeks to describe in the form of a realistic event what is a theoretical construction,—something which in fact did not occur. Indeed while the expression of opinion of market value based on retrospectively obtained information may seem on the surface to be of inferior quality, it would be naive to suppose that the local expert is not himself obliged to resort to the records of prior transactions, for they obviously are not all matters within his current recollection. The distinction between contemporaneously and retrospectively acquired information is an artificial one, and at the most would affect only the weight of the expert's opinion. In the

often quoted words of Chief Judge Parker, "Artificial rules of evidence which exclude from the consideration of the jurors matters which men consider in their everyday affairs hinder rather than help them at arriving at a just result. In no branch of the law is it more important to remember this, than in cases involving the valuation of property, where 'at best, evidence of value is largely a matter of opinion'. See Montana R. Co. v. Warren, 137 U.S. 348, 352, 11 S.Ct. 96, 34 L.Ed. 681 * * * [1890]." United States v. 25.406 Acres of Land, 172 F.2d 990, 995 (4 Cir. 1949), cert. denied, 337 U.S. 931, 69 S.Ct. 1496, 93 L.Ed. 1738.

The Pennsylvania decisions upon which the court below relied are inextricably related to its now discredited bar on the admission of the selling price of comparable property. Its repeal by the Eminent Domain Code of 1964, § 705(2), shows how little was the advantage of rules which confined the expert to rigid formulations, preventing spontaneity in testimony and allowing only through the back door elements which outside the courtroom reasonable men would deem significant in the determination of such factual questions. Since the federal courts receive evidence of the sales price of comparable property as substantive evidence of value, and this is necessarily retrospective, it would be anomalous to hold that an expert is not qualified to express his opinion of the value of real estate which he has personally examined and studied, simply because his knowledge of values in the general area was retrospectively acquired.

■ The increasing recognition of the principle which confers on the trial judge a wide discretion in dealing with evidence is based in large part on the federal rule that admissibility and competency are to be determined on practical considerations. This discretion is a recognition of the variations in individual circumstances. It is, therefore, all the

20. See Denver Union Stock Yard Co. v. United States, 304 U.S. 470, 477, 58 S.Ct. 990, 82 L.Ed. 1469 (1938), aff'g 21 F. Supp. 83, 88–89 (D.Colo.1937).

more necessary that where the trial judge's action is based on general considerations rather than the measurement of individual circumstances the appropriate principle be laid down.

We therefore hold that if there be a difference in the reliability of information currently received and that which is retrospectively obtained, it is a difference which goes merely to the weight of the evidence and not to the competency of the witness. This rule is particularly required in this era of vast governmental programs which often require the condemnation of land in sparsely located areas where real estate brokers are few and the government often would be unable to secure impartial expert evidence.

In its opinion denying the government's motion for new trial the court below amplified its conclusion that Minsinger was incompetent with two additional grounds. One was that the sales on which he relied were not in fact comparable to the condemned property and the other was that his knowledge of these sales was hearsay.

 The hearsay nature of Minsinger's knowledge of the comparable sales clearly does not justify the exclusion of his testimony. Under the federal rule hearsay evidence of the sales themselves was admissible and Minsinger, therefore, was entitled to rely on them. E. g., United States v. Sowards, 339 F.2d 401, 402 (10 Cir. 1964); United States v. 5139.5 Acres of Land, 200 F.2d 659, 662 (4 Cir. 1952).

 We need not consider what would be the effect of the absence of any comparable sales. For we believe from our examination of the evidence that the sale prices of the properties which Minsinger deemed comparable would have been admissible as substantive evidence, although of course, the weight of this evidence would be for the jury. Since the evidence was offered not as independent, substantive proof of value, but merely as background support for Minsinger's expert opinion as to value, the requirement of comparability is less strict. See 5 Nichols, The Law of Eminent Domain (Rev. 3d ed. 1962), § 18.42 [1], p. 253; United States v. Johnson, 285 F.2d 35, 41 (9 Cir. 1961). The properties on which Minsinger relied were sufficiently comparable to support his expression of opinion under this reduced requirement, and its weight was for the jury.

 We conclude therefore that in view of Minsinger's qualifications and the information he had acquired regarding the properties in the area, he was qualified to express an expert opinion of the value of the condemned property.

The judgment of the court below therefore will be reversed with direction to award a new trial.