UNITED STATES of America,
Plaintiff,

v.

264.80 ACRES OF LAND, MORE OR LESS, situate IN RAMSEY COUNTY, STATE OF NORTH DAKOTA, and Nathan Boatman, et al., and unknown owners, Defendants.

Civ. No. 4646.

United States District Court,
D. North Dakota,
Northeastern Division.

July 30, 1973.

Eugene K. Anthony, Asst. U. S. Atty., Fargo, N. D., for plaintiff.

Richard H. McGee, McGee, Hankla, Backes & Wheeler, Minot, N. D., for defendants.

## MEMORANDUM AND ORDER

BENSON, Chief Judge.

In this condemnation action involving two tracts, one a fee taking designated as Tract 100, and one a restrictive ease-

ment designated as Tract 100E, the jury awarded the landowner $28,000.00 as just compensation for the taking. In response to special interrogatories, the jury indicated that the award included severance damages in the amount of $8,825.00, and just compensation for Tract 100E in the amount of $13,175.00. The remaining $6,000.00 would then be just compensation for Tract 100.

The United States has filed a timely Motion for Judgment Non Obstante Veredicto, Or In The Alternative For A Remittitur, Or In The Further Alternative For A New Trial. As the motion for judgment notwithstanding the verdict does not appear to be an appropriate motion in this case, the Court will treat the motion as a motion for remittitur or in the alternative for a new trial. The motion relates primarily to the testimony of landowner's witnesses Elizabeth Boatman, William Stinkeoway, and Stanley G. Saugstad. It relates incidentally to an allegation that landowner's counsel's trial tactics created a prejudicial atmosphere. The Assistant United States Attorney has filed an excellent and comprehensive brief in support of his position. The Court will consider separately the testimony of each of the three witnesses.

## ELIZABETH BOATMAN

■ The landowner, Nathan Boatman, died after the condemnation action was filed and before trial. His widow, Elizabeth Boatman, executrix of his estate, was the person entitled to payment of the just compensation, and was substituted in the action to represent the interest of the deceased landowner. She testified the value of the taking to be $93,700.00, and the Court denied the motion of the United States to strike her testimony.

The United States concedes that Mrs. Boatman was "possessed of a wealth of personal information concerning the improvements, the physical characteristics, and the development of the subject property during the Boatman ownership", and correctly states that her testimony was limited to a physical description of the subject property before and after the taking. The motion to strike was based on the contention that her testimony was speculative and without market support.

Mrs. Boatman had lived and worked with her husband on the land from the time it was acquired and until his death. The 8th Circuit has allowed such testimony because of the landowner's special knowledge. United States v. 3,698.63 Acres of Land, etc., North Dakota, 416 F.2d 65 (8th Cir. 1969). In the light of all the evidence, it is the view of this Court that her value testimony, while relevant, was entitled to little weight. It is readily apparent from the verdict that it was afforded little weight by the jury, and considering the jury's award was less than the landowner's expert witness's valuation, it was obviously not prejudicial to the United States.

## WILLIAM STINKEOWAY

■ This witness had negotiated a sale of approximately 480 acres of land to the Bureau of Sport Fisheries and Wildlife. He was permitted to testify over the vigorous objection of the United States, and the subsequent motion to strike his testimony was denied. The sale was approximately eight months after the Boatman date of taking, and the Bureau of Sport Fisheries and Wildlife had the power of condemnation. The United States objected to the testimony on these grounds, and on the further grounds that from the very favorable terms given to the seller, it was evident this was a special purpose sale, the details of which were highly prejudicial to a determination of fair market value by the jury.

This Court, after carefully reviewing the cases, finds that the recent trend has been in favor of granting the trial court broad discretion in determining the admissibility of sales such as the one in contention. The Government's objections do not support a per se exclusionary rule, but go to the weight of the evidence. United States v. 1,129.75 Acres of Land, 473 F.2d 996 (8th Cir. 1973);

United States v. 691.81 Acres of Land, 443 F.2d 461 (6th Cir. 1971); Nash v. D. C. Redevelopment Land Agency, 129 U.S.App.D.C. 348, 395 F.2d 571 (1967); United States v. 145.31 Acres of Land, 54 F.R.D. 359 (M.D.Pa.1972).

This Court had serious reservations relative to the evidence of the Stinkeoway sale, and reserved its ruling on the motion to strike until all the evidence in the case was presented. On the basis of all the evidence, the Court concluded the testimony had probative value and was not prejudicial.

On the motion to strike, the Court received in camera Exhibit 93, a communication to landowner's counsel from the District Supervisor of the Bureau of Sport Fisheries and Wildlife. This communication stated that in purchasing lands, the Bureau does not exercise and does not mention its power of eminent domain.

██ The evidence established that the Stinkeoway land was comparable to the Boatman land as to proximity, physical characteristics, and use. Further, this purchase of land in the area by the Bureau of Sport Fisheries and Wildlife was not an isolated transaction. The Bureau had made several other purchases in the area, and it is the view of this Court that taken together, all of these purchases had a significant impact on the general market value of land in that community.

" 'The theory of admissibility is that although evidence of a purchase by the condemnor of property similar to that involved in a condemnation proceeding is less persuasive on the issue of market value than evidence of a purchase by a stranger, there is no reason in principal why such evidence should not be admitted provided the purchase by the condemnor was made without compulsion; in short, it is held that objection . . . goes to its weight, not to its competency.' " Nash 395 F.2d at 576. (Citations omitted).

In Nash we find 395 F.2d at 576 and 577, the following:

The admission of evidence in condemnation cases is committed to the discretion of the trial judge. Where one party to a transaction is armed with the condemnation power, the court should be especially alert to the distortions of coercion. Jury verdicts will not be reversed unless, looking at the whole record, the reviewing court is convinced that the jury did not have a reasonable opportunity to determine the question of fair market value and that its conclusion is patently an unjust product of an unjust proceeding." See also 691.81 Acres of Land, which, on similar reasoning, admitted a subsequent sale to a buyer having the power of condemnation.

On the admissibility of subsequent sales, this Court is guided by the rationale of Chief Judge Matthes, who stated the position of the 8th Circuit in the United States v. 1,129.75 Acres of Land, 473 F.2d 996 (8th Cir. 1973), as follows:

"Generally, evidence of sales of comparable property is persuasive evidence of market value, either as direct proof or in support of a witness's opinion. The threshold question of admissibility, whether particular sales are sufficiently similar and proximate to the property in litigation to have some bearing on market value, must necessarily rest in the sound discretion of the trial court."

"Courts have been reluctant to admit evidence of subsequent comparable sales when (1) the particular sales involved were not sufficiently comparable to the litigated property in character, locality or time, or (2) the subsequent sale price reflected an important enhancement in value because of the project for which the land was taken. In all of the recorded cases, however, the courts have refrained from adopting a per se exclusionary rule. . . .

"Our disagreement with the trial judge in the instant case flows from

the erroneous premise upon which he bottomed his ruling, to wit, that evidence of subsequent sales is never proper for consideration in arriving at fair market value. Stated differently, the trial judge failed to exercise his discretion. The law of evidence in federal courts favors a broad rule of admissibility and is designed to permit the admission of all evidence which is relevant and material to the issues in controversy, unless there is a sound and practical reason for excluding it. In sum, we hold that under appropriate circumstances evidence of subsequent comparable sales is admissible as an aid to determining market value." at 998, 999 (Citations omitted).

The Government cites Evans v. United States, 326 F.2d 827 (8th Cir. 1964) in support of its contention that a sale to a buyer having the power of eminent domain is not an "arms-length" deal, is akin to a "forced sale", and is therefore inadmissible. Evans is not as comprehensive as the Government reads it. Evans merely follows the majority rule that "evidence of prices paid by the government for the purchase through private negotiations of lands in connection with a project condemned or to be condemned is not generally admissible." at 831. Evans specifically notes as exceptions those cases where the power of condemnation "had no influence because the sale was not in connection with, or in anticipation of, condemnation proceedings." at 831.

## STANLEY G. SAUGSTAD

The landowner's expert witness, Stanley G. Saugstad, is well qualified and has had much experience in condemnation cases. After testifying as to his familiarity with the land and the taking, his appraisal techniques, and his examination of public records of comparable sales, he gave his opinion of the before and after values. He set his opinion of just compensation for the taking at $32,185.00. Following this testimony and without further foundation, Exhibits 90 and 91 were offered and received in evidence without objection. Exhibit 90 is a compilation of the witness's comparable sales. Exhibit 91 is a summary "break out" of his valuation. No testimony was elicited from the witness by either the landowner's counsel or the Assistant United States Attorney relative to these two exhibits. The objections of the United States to the testimony of this witness is stated as follows:

"The summary of comparable sales of Stanley G. Saugstad is not supported on the record and does not form a proper evidentiary basis for support of his *value* conclusions or the jury award."

"The summary of *value* testimony of Stanley G. Saugstad is not supported on the record by his testimony or otherwise, does not support his conclusions of value, and the explicit use of his specific damages related to fee taking and easement award by the jury constituted an improper and impermissible use of this summary by the jury in making its award."

"The *summation method* of valuation by Stanley G. Saugstad as to ditching, drainage and rock removal was improper and impermissible and is not probative evidence upon which to support the verdict of the jury."

The $13,175.00 figure disclosed by the jury on the special interrogatories relative to Tract 100E was the same figure used by Saugstad in his summary set out on Exhibit 91. However, Saugstad's summary of severance damages as shown on Exhibit 91 was $13,000.00, whereas the jury figure on its special interrogatory was $8,825.00. Saugstad's summary breakout set the fee value (Tract 100) at $6,000.00. From the interrogatories it appears the jury award allocated $6,000.00 to the fee taking. The United States cites these two figures as "clear and unmistakable proof that the jury utilized this meaningless and inappropriate summary of value".

The use and foundation of expert testimony in condemnation cases was dis-

cussed in United States v. 60.14 Acres of Land, 362 F.2d 660 (3rd Cir. 1966):

> " 'To warrant the use of expert testimony . . . two elements are required. First, the subject of the inference [which he is to draw from the facts] must be so distinctively related to some science, profession, business or occupation as to be beyond the ken of the average laymen, and second, the witness must have such skill, knowledge, or experience in that field or calling as to make it appear that his opinion or inference will probably aid the trier in his search for truth' . . ."

> "It is true that a real estate expert, unlike the usual expert, is not called on to express an opinion on hypothetical facts which he is asked to assume to be true without having any personal information on the subject. The practical reason for this is that there are no universal values of real estate, which is peculiarly bound by its situs. A real estate appraiser, no matter how well qualified he may be in general, therefore, is not an expert on the value of property which is unknown to him or is situated in an area which is unfamiliar to him. Instead the essential elements of the real estate expert's competency include his knowledge of the property and of the real estate market in which it is situated, as well as his evaluating skill and experience as an appraiser." at 667, 688. (Citations omitted).

The record establishes conclusively that Mr. Saugstad was qualified in this case to express his opinion as to the total just compensation for the taking of Tracts 100 and 100E. Exhibits 90 and 91 were not necessary for his testimony to stand. *See generally* 5 Nichols on Eminent Domain, Sales and Offers § 21.3 [2]. The position of the United States with reference to Exhibit 91 is interesting. On the one hand it contends the summary is not substantial evidence which could have been considered by the jury because it was not supported by the evidence in the case. On the other hand, the United States uses the exhibit as evidence that establishes the expert used an impermissible summary approach in arriving at his figures.

The United States chose not to object to Exhibits 90 and 91 and chose not to explore whether a summation approach had in fact been used, or otherwise probe the weight of the expert's testimony through cross-examination. The Court views this as a trial tactic by the Assistant United States Attorney, who is highly competent and experienced in condemnation matters, a tactic which prevented him from utilizing the best means of questioning the weight of Saugstad's testimony. *See generally* 5 Nichols on Eminent Domain, Evidence § 18.45[2].

The expert witness's opinion of total just compensation of $32,185.00 was competent evidence for the jury to consider in reaching its verdict of $28,000.-00.

The final point at issue raised by the United States is that the conduct of the landowner's trial counsel created a prejudicial atmosphere. The Court does not agree. On the basis of all the evidence in the case it appears the verdict was fair, reasonable, and supported by substantial competent evidence.

It is ordered the motion of the United States is denied.